**STATE of Tennessee**

**v.**

**Danny Ralph TROUTMAN.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 27, 2007 Session.

Oct. 30, 2008.

Keith A. Haas, Newport, Tennessee, for the appellant, Danny Ralph Troutman.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; James B. Dunn, District Attorney General; and Amanda H. Inman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

NORMA McGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

The appellant, Danny Ralph Troutman, was found guilty by a jury in the Cocke County Circuit Court of driving under the influence, fourth offense, a Class E felony. The trial court imposed a sentence of two years. On appeal, the appellant questions whether "[t]he State failed to properly self authenticate the [appellant's] Tennessee driving record," and he challenges the sufficiency of the evidence supporting his con-

viction. Upon our review of the record and the parties' briefs, we reverse the appellant's conviction for DUI, fourth offense; modify the conviction to reflect the appellant's guilt of DUI, first offense; and remand for resentencing on the new conviction.

### I. Factual Background

In November 2005, the Cocke County Grand Jury returned a multi-count indictment charging the appellant with driving under the influence (DUI), fourth offense; possession of marijuana; possession of drug paraphernalia; and violation of the implied consent law. At trial, Deputy Kevin Benton with the Cocke County Sheriff's Department testified that in the early morning hours of July 2, 2005, he and Deputy Steve Johnson were assisting the Tennessee Highway Patrol with a roadblock being conducted during the July 4th holiday weekend. The roadblock was in Cocke County.

At approximately 1:00 a.m., Deputy Benton observed the appellant driving at a high rate of speed toward the roadblock. The officers had to "wave down" the appellant using orange cone flashlights to get the appellant to stop the vehicle. Deputy Benton approached the driver's side of the appellant's vehicle, and when the appellant rolled down the window, Deputy Benton smelled the odor of alcohol. As the appellant spoke, Deputy Benton noticed that the appellant's speech was slurred.

Deputy Benton instructed the appellant to pull into a nearby parking lot for field sobriety tests to be administered. When the appellant parked his vehicle, Deputy Benton asked the appellant for his driver's license. The appellant got the license from his wallet without any difficulty. Deputy Benton asked the appellant to exit the vehicle. The appellant was unsteady on his feet when he stepped out of the vehicle. Deputy Benton said that the appellant's unsteadiness was not attributable to any visible injury. Deputy Benton recalled that the appellant's vehicle smelled of alcohol, but the smell of alcohol was stronger on the appellant.

Deputy Benton said that he instructed the appellant to perform three field sobriety tests. The appellant informed Deputy Benton that he had no health problems which would hinder his performance on the field sobriety tests. The first field sobriety test Deputy Benton asked the appellant to perform was the "heel-to-toe" test. Deputy Benton demonstrated the test for the appellant, explaining that he needed to "stand and put one foot right in front of the other [and] take nine steps forward [on a real or imaginary line], touching heel to toe on each step, turn around and then take nine steps back to where [he] began." However, the appellant missed placing his toe to his heel two or three times and he stepped off the line during the test. Deputy Benton opined that the appellant failed the heel-to-toe test.

Next, Deputy Benton instructed the appellant to recite the alphabet starting at D and ending at Q. Prior to attempting the test, the appellant told Deputy Benton that he knew the alphabet. Deputy Benton recalled that the appellant "tried it two times and he kept throwing letters in when they wasn't supposed to be" and would then start again with the letter D. Therefore, Deputy Benton opined that the appellant failed the alphabet test.

Deputy Benton explained that to perform the third field sobriety test "normally it's hands out to the side, tilt your head back and spread your fingers wide. And what you do is you have them close their eyes and bring their finger in and touch the tip of their nose." Deputy Benton said that two misses on the "touch the nose" test is considered a failure. The appellant

missed his nose four times, failing the third field sobriety test.

After the appellant failed the third field sobriety test, Deputy Benton arrested him for DUI. Deputy Benton called for a "rollback" to tow the appellant's vehicle. While awaiting the rollback, Deputy Benton inventoried the appellant's vehicle. In the vehicle, Deputy Benton found what he believed to be a marijuana pipe containing marijuana residue.

The appellant was taken to the jail, and Deputy Benton asked him to submit to a blood test to determine his blood alcohol level. Deputy Benton read the appellant the implied consent form, explaining that the appellant could lose his license if he refused the blood test. The appellant refused the test and refused to sign the implied consent form to acknowledge that the form had been read to him.

Deputy Benton said that after the appellant refused to sign the implied consent form, he became irate and started yelling and cursing. At that point, the officers used a taser to subdue the appellant. The appellant was tasered twice in the leg, then, after he spit at an officer, he was tasered once in the groin. Deputy Benton explained that the appellant was tasered in the groin because he was "extremely hostile" and using the taser on the appellant's leg was insufficient to subdue him.

Deputy Steve Johnson with the Cocke County Sheriff's Department testified that on the morning of July 2, 2005, he and Deputy Benton were assisting the Tennessee Highway Patrol with a roadblock. During the stop of the appellant's vehicle, Deputy Johnson dealt with a female passenger who was in the vehicle with the appellant. Deputy Johnson could not recall the details of the appellant's field sobriety tests.

At the close of the State's case-in-chief, the appellant moved for a judgment of acquittal on all charges. The trial court granted a judgment of acquittal as to the possession of marijuana and possession of drug paraphernalia charges; however, the trial court denied the motion as to the DUI charge and the violation of the implied consent law.

The appellant testified in his own defense. The appellant said that he was from Elizbethton, but he had been in Kodak all day on July 1, 2005, working on a vehicle that his passenger, Crystal Godsey, was buying from her friend, Melissa Bevins. The appellant said that while they were at Bevins' mobile home, he became upset with Godsey because she had been drinking.

The appellant said that when he and Godsey left Bevins' mobile home, he became lost because he was unfamiliar with the Kodak area. He said that he encountered the roadblock when he was searching for a sign to lead him to Johnson City. The appellant stated that the police probably did smell alcohol in the vehicle because "[i]t was all over the floorboard of the passenger's side, down one side of my pants leg where Ms. Godsey had puked on me [after drinking that day]." He stated that he did not tell police that Godsey had gotten sick in the vehicle because they did not ask him about it. The appellant said that he had drunk only one "hot beer" in the vehicle. He said he drank the beer to keep Godsey from drinking anymore. The appellant opined that he was not too impaired to drive.

The appellant said that he was "not real good at" the heel-to-toe field sobriety test. He acknowledged that he was "[e]ven worse at" reciting the alphabet. The appellant stated that it was not unusual for him to be "[p]retty terrible" at reciting the

alphabet, explaining, "[T]hat's part of the reason I draw a disability check."

The appellant said that he recalled being read a form and being asked to sign it. He said that he did not sign the implied consent form because "I can't read and I didn't want to sign anything I couldn't read." The appellant claimed that at about the same time police asked him to sign the implied consent form, they tasered him three or four times on his leg and "next to the center part of the body."

The jury acquitted the appellant of a violation of the implied consent law but found him guilty of DUI. Thereafter, the court submitted to the jury the question of whether the appellant should be convicted of DUI, fourth offense.

At the beginning of the hearing regarding the appellant's guilt of DUI, fourth offense, the State called Deputy Benton. Defense counsel immediately requested a sidebar, during which he stated:

> I think [the State is] going to ask Mr. Benton if he had pulled the driving history and, of course, then they've got copies of the abstracts of judgments. I think the best evidence is just the abstract of records, and then I'd like to have an argument ... about the abstracts of judgments.

At that point, the State had marked as exhibits for identification only copies of "abstracts of the [appellant's driving] record" that it asserted were "certified as true and accurate by Kenneth Birdwell out of Nashville."[1] The abstracts reflected that the appellant had been convicted of DUI in Unicoi County on June 28, 1990; in Carter County on April 13, 1992; and in Washington County on December 16, 1996.

Defense counsel objected to the abstracts being used, arguing that the documents were not self-authenticating under Rule 902(4) of the Tennessee Rules of Evidence, which requires that copies of public records must be certified in accordance with the provisions of Rule 902(1), (2), or (3). Specifically, counsel argued that the documents were not properly signed because they bore only a stamped facsimile signature and did not bear a seal to indicate authenticity or an accompanying attestation of authenticity as required by Rule 902(1) or Rule 902(2). The trial court overruled the objection, stating that

> [t]he Rules of Evidence ... are certainly guidelines for a court to follow, but the final decision as to the admission or nonadmission of evidence is obviously left up to this court, and the real rule that I need to follow ... is to whether or not these documents tell the true story. In other words, the reliability, I guess, of the evidence is the true test. I would be of the opinion that these documents accurately tell exactly the true record of [the appellant]. I don't think they are forgeries or that any fraud is being practiced upon the Court or the State. So, they will be admitted over the objection, which is noted and which may very well raise an interesting question for those people that grade my papers.

Once the trial court admitted the abstracts, the State did not present the testimony of Deputy Benton nor did it submit the "driving history" mentioned by defense counsel; instead, the State relied solely upon the abstracts. After considering the abstracts, the jury found the appellant guilty of DUI, fourth offense.

---

1. *See* Tenn.Code Ann. § 55–10–306(a)–(e) (2004) (providing that every magistrate or judge of a court shall keep a record of every legal form of traffic charge and shall prepare and forward to the department of safety a certified abstract of that record that shall be kept by the department for inspection).

On appeal, the appellant argues that the State "failed to properly self authenticate the Tennessee driving record" and that the evidence is insufficient to sustain his conviction.

## II. Analysis

### A. Self–Authentication

■ First, we will address the appellant's issue regarding whether the abstracts of the appellant's driving record were properly authenticated. Tangible evidence, such as documents, must be authenticated as "one essential step toward admissibility" at trial. Neil P. Cohen et al., *Tennessee Law of Evidence* § 9.01[2][b] (LEXIS publishing, 5th ed.2005). Typically, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a); *see also* 29A Am.Jur.2d *Evidence* § 1191 (2008) ("In general, to properly authenticate a document, a party is required to present evidence which demonstrates that the document is what the party claims it to be."). However, the Rules of Evidence "adopt[ ] the position that the purported signature or recital of authorship on the face of a writing will *not* be accepted, without more, as sufficient proof of authenticity to secure the admission of the writing in evidence." 2 *McCormick on Evidence* § 221, at 57 (Kenneth S. Broun, ed., 6th ed.2006) (interpreting Federal Rule of Evidence 901).[2] In other words, the fact that a document is signed is not enough, standing alone, to establish its authenticity for the purposes of admissibility. Of particular importance to the case before us, when determining the authenticity of a public record or report, "[u]nless the writing is self-authenticating pursuant to rule 902, testimony must be presented by an individual with personal knowledge that the particular writing or record meets the requirements of this rule." Cohen et al., *Tennessee Law of Evidence* § 9.01[9]; *see also* Tenn. R. Evid. 901(b)(7).

■ Rule 902 of the Tennessee Rules of Evidence, the rule governing self-authentication, "lessens the authentication burden" for certain types of documentary evidence and allows "[a] document or item covered by Rule 902 [to] be authenticated by reference to the evidence itself; no other proof is needed in most cases." Cohen et al., *Tennessee Law of Evidence* § 9.02[2]. In other words, a proponent of a self-authenticating document need not present testimonial evidence regarding the document's authenticity. "The rationale underlying the notion of self-authentication is that the likelihood of fabrication or honest error is so slight in comparison with the time and expense involved in authentication that extrinsic evidence is not required." 4 Michael H. Graham, *Handbook of Federal Evidence* § 902:0 (6th ed.2007).

Rule 902 provides that the following types of evidence do not require extrinsic evidence of authenticity:

(1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the State of Tennessee, . . . or of a political subdivision, department, office, or agency thereof,

**2.** Federal Rule of Evidence 901(a), which is virtually identical to Tennessee Rule of Evidence 901(a), provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Additionally, a leading treatise on Tennessee evidence maintains that Tennessee Rule of Evidence 902 "is virtually identical with the equivalent federal rule." Cohen et al., *Tennessee Law of Evidence* § 9.02[2].

and a signature purporting to be an attestation or execution.

(2) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

. . . .

(4) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office (including data compilations in any form), certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or the Tennessee Legislature or rule prescribed by the Tennessee Supreme Court.

Tenn. R. Evid. 902(1), (2), and (4). The critical question which must be answered when determining whether a document is self-authenticating "is whether there are sufficient circumstances justifying authenticity that the typical foundation requirements can be omitted." Cohen et al., *Tennessee Law of Evidence* § 9.02[2].

In the instant case, two of the documents in question purport to be copies of abstracts of record from the Tennessee Department of Safety Driver Control Division and the other document is a copy of a Tennessee Department of Safety "court action report." The documents reflect the appellant's previous convictions for DUI and were signed by a judge or a clerk. On the back of each document is a red ink stamp containing the facsimile signature of Kenneth W. Birdwell and the following attestation:

I hereby certify that I, Kenneth W. Birdwell, have been appointed by the Commissioner of the Tennessee Department of Safety as Keeper of the Official Driver Records and that this is a true and correct copy of the record on file with this department.

Clearly, the admissibility of the instant documents falls under Rule 902(4) which addresses certified copies of public records. In order to be admitted pursuant to the self-authentication provision of Rule 902(4), a document must meet the certification requirements of Rule 902(1), (2), or (3). Tenn. R. Evid. 902(4). The documents in question are not foreign public documents; therefore, Rule 902(3) is not applicable. Tenn. R. Evid. 902(3). Accordingly, we must determine whether the certification of the documents satisfies subsection (1) or (2).

On appeal, the appellant's argument that the documents are not properly certified is essentially three-fold. First, the appellant contends that the documents are not properly certified because the signature is only a stamped facsimile of a signature. Second, the appellant contends that the certification is not proper because the documents do not bear a raised or imprinted seal. Third, the appellant contends that the documents are not properly certified because they bear no seal at all.

■ Regarding the first concern, the appellant argues that the documents are not properly certified because the signature on the certification is a stamped facsimile and is therefore not "genuine." This court has previously examined a similar issue regarding a rubber-stamped signature. In that case, we concluded that a stamped signature is valid. *See State v.*

*Randal Todd Kemper,* No. M2004–00219–CCA–R3–CD, 2004 WL 2218471, at *3 (Tenn.Crim.App. at Nashville, Sept. 30, 2004). Therefore, the appellant's argument fails.

■ Next, the appellant argues that the documents do not satisfy the seal requirement of Rule 902(1) or (2) because there is "no raised mark similar to a notary public mark" on the documents. We disagree with the appellant's contention that a document must bear a "raised mark" or an embossed seal to be properly authenticated. There is no rule requiring that a seal on a document be raised in order to be valid.[3]

■ More problematic, however, is the appellant's contention that the certification on the documents does not bear a seal to indicate authenticity as is required by Rule 902(1) or an accompanying attestation as is required by Rule 902(2). Rule 902(1) requires that a document be "under seal" to be self-authenticating. Rule 902(2) provides that documents "not under seal" may be self-authenticating "if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee [who signed the document] certifies under seal that the signer has the official capacity and that the signature is genuine." Tenn. R. Evid. 902(2). In other words,

> If the certificate is to be self-authenticated under rule 902(1), it must bear a seal of a domestic governmental agency and a signature purporting to be an attestation of execution. If the certificate is to be self-authenticated under Rule 902(2), the certificate may not bear a seal. In fact, the certificate must bear the signature 'in the official capacity' of

an officer or employee of a domestic public agency that does not have a seal. Further, there must be a second certificate in which another public officer, with duties in the same district or political subdivision as the signer of the first certificate, certifies under seal that the signer of the first certificate had the official capacity to sign and that his signature is genuine.

31 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 7138(4) (2008) (footnotes omitted). Analyzing the comparable federal rule, one treatise explained that "[s]ince it is easier to forge a document not under seal than a document under seal, Rule 902(2) provides that domestic public documents not under seal are not self-authenticating unless certified by a public officer who has a seal." 29A Am.Jur.2d *Evidence* § 1193 (2008).

In the instant case, the certification on the documents does not comply with Rule 902(1) or 902(2). The signatory did not affix a seal to the documents; therefore, the documents were not "under seal" for the purposes of Rule 902(1). Further, no other officer affixed a seal to the documents or verified the capacity or signature of the signing officer. Therefore, the instant documents are not admissible under Rule 902(2).

Because the rule governing self-authentication "lessens the authentication burden" when "there are sufficient circumstances justifying the authenticity that the typical foundation requirements can be omitted," parties must strictly comply with the provisions of Rule 902. Cohen et al., *Tennessee Law of Evidence* § 9.02[2]. Said another way, when a party takes ad-

---

**3.** Notably, Tennessee Code Annotated section 8–16–114(a) (Supp.2003), which addresses seals for a notary public, provides that the "seal of office may be imprinted by a rubber or other type of stamp." The statute also provides that embossed seals will no longer be used. *Id.*

vantage of the "evidentiary shortcut" provided by Rule 902 and does not call a witness to testify as to the authenticity of the document, the proponent of the document must ensure compliance with the applicable provisions of Rule 902. The requirements are not difficult to satisfy.

Moreover, evidence of the appellant's prior convictions was readily available to the State.[4] Notably, Tennessee Code Annotated section 55–10–403(g)(3)(A) (Supp. 2006) expressly provides that "[n]otwithstanding any other rule of evidence or law to the contrary, in the prosecution of second or subsequent offenders under this chapter the official driver record maintained by the department and produced upon a certified computer printout shall constitute prima facie evidence of the prior conviction." Further, properly certified copies of judgments of conviction would have also been admissible. However, the documents in question do not fall within the parameters of Tennessee Code Annotated section 55–10–403(g)(3)(A). Further, we can find no other statutory provision which would provide for the admission of the documents in question, and the parties' on appeal have not directed us to any such provision. Therefore, because the documents do not satisfy either subsection (1) or (2) of Rule 902, we must conclude that they were not self-authenticating.

On appeal, the State argues that, because the documents were public records and were "reliable," they were properly admitted under Rule 901, which provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). At trial, the trial court opined that "these documents accurately tell exactly the true record of [the appellant]. I don't think they are forgeries or that any fraud is being practiced upon the Court or the State." In other words, the trial court essentially found the documents admissible under Rule 901. We agree with the trial court that the documents appear to be genuine. However, as we earlier stated, if the documents were not self-authenticating, the State was required to present extrinsic evidence regarding the authenticity of the documents. *See* Cohen et al., *Tennessee Law of Evidence* § 9.01[9]. The State did not do so. Thus, we are compelled to conclude that the trial court erred in finding the documents admissible.

**B. Sufficiency of the Evidence**

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Tenn. R.App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983). In other words, questions concerning the credibility of witnesses and

---

4. The appellant does not raise the issue of whether the documents submitted by the State would have been sufficient to establish the appellant's prior convictions. Because we have concluded that the documents were not self authenticating, we need not address that issue.

the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 55–10–401 (2004) provides:

(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system. . . .

Further, a fourth or subsequent DUI conviction is a Class E felony. Tenn.Code Ann. § 55–10–403(a)(1) (2004).

■■■ At trial, Deputy Benton testified that he had to "wave [the appellant] down" to get him to stop his vehicle for a roadblock. Deputy Benton recalled that the appellant's speech was slurred. Also, the appellant's vehicle smelled like alcohol, but the odor was stronger on the appellant. Deputy Benton said that he administered three field sobriety tests to the appellant, giving the appellant multiple chances to successfully complete the tests. However, the appellant failed all three tests. The appellant testified that he was not inebriated; however, he admitted to drinking one "hot beer" before he stopped for the roadblock. We conclude that the foregoing proof was sufficient to sustain the appellant's conviction for DUI. However, we concluded *supra* that the trial court impermissibly admitted documents which were the State's sole proof of the appellant's previous DUI convictions. Therefore, the appellant's conviction was improperly enhanced to DUI, fourth offense. Thus, we must reduce the appellant's conviction to DUI, first offense.

### III. Conclusion

Based upon the foregoing, we reverse the appellant's conviction for DUI, fourth offense and remand the case to the trial court for entry of a new judgment of conviction reflecting the appellant's conviction for DUI, first offense and for resentencing.