# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 26, 2012 Session

## STATE OF TENNESSEE v. DEBORAH DAVIS

### Appeal from the Criminal Court for Hamilton County
### No. 272693      Rebecca J. Stern, Judge

### No. E2011-01519-CCA-R3-CD - Filed December 27, 2012

Following a bench trial, the Defendant, Deborah Davis, was convicted of one count of driving under the influence (DUI), first offense, a Class A misdemeanor. See Tenn. Code Ann. § 55-10-401. The Defendant was sentenced to eleven months, twenty-nine days with forty-eight hours to be served in confinement and the remainder to be served on unsupervised probation. In this appeal as of right, the Defendant contends (1) that the trial court erred by denying her motion to suppress all evidence gathered by the police pursuant to an accident investigation because such evidence was protected by the accident report privilege of Tennessee Code Annotated section 55-10-114(b); and (2) that the evidence was insufficient to sustain her conviction. Following our review, we conclude that these issues are without merit and affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

C. Parke Masterson, Jr., Chattanooga, Tennessee, for the appellant, Deborah Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; William H. Cox, III, District Attorney General; and Brian Spurlock Finaly, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

At approximately 8:00 p.m. on January 4, 2009, Harriet Scott and her daughter were sitting in their disabled blue Lumina on the shoulder of Wilcox Boulevard while they waited

for Ms. Scott's mother to pick them up. At trial, Ms. Scott testified that her car was "on the shoulder of the road out of the street" and that no portion of her car was in the roadway. Ms. Scott also testified that she had turned her "caution lights" on. As Ms. Scott waited for assistance, she saw a "van" approaching "at a high rate of speed" and without its headlights on. Despite the fact that Ms. Scott's vehicle was entirely on the shoulder of the road, the minivan rammed into the rear of the Lumina. Ms. Scott testified that after the collision she discovered that she was trapped in her vehicle and called 911. While Ms. Scott waited on emergency personnel to arrive, a woman approached her vehicle and asked her if she was "okay." However, Ms. Scott testified that she did not see who was driving the minivan.

At approximately 9:20 p.m., Officer Michael Terry of the Chattanooga Police Department arrived at the scene of the accident. At trial, Officer Terry testified that he observed the blue Lumina "on the side of the road with the hazard lights on and a minivan in the middle of the road kind of angled . . . across the lanes." According to Officer Terry, the Lumina was facing east and the minivan was "facing a southwest direction." Officer Terry noticed "rear-end damage" on the Lumina and damage to the front of the minivan. When Officer Terry arrived on the scene, emergency personnel were attempting to get Ms. Scott and her daughter out of the Lumina; therefore, Officer Terry began his investigation by speaking with the Defendant. Officer Terry testified that the Defendant "did not deny being the driver" of the minivan. Officer Terry also testified that he did not believe that there was anyone else with the Defendant in the minivan.

According to Officer Terry, as he spoke with the Defendant, he "noticed a strong smell of an intoxicant on her breath," that she was "[v]ery unsteady on her feet," and that her speech was "slurred." Officer Terry asked the Defendant if she had anything to drink that evening, and the Defendant stated that she had drunk "two Bud Ice beers . . . approximately an hour to two prior" to the accident. The Defendant also told Officer Terry that each can of beer was twenty-two ounces. Based upon these observations, Officer Terry administered the following field sobriety tests to the Defendant: the horizontal gaze nystagmus, the one-leg stand, the walk-and-turn, and a counting test.

Officer Terry testified that the Defendant "was unable to follow the instructions [at] the beginning of [the walk-and-turn] as far as when [he] told her to stand a certain way, she was unable to perform that." Officer Terry further testified that during the walk-and-turn test, the Defendant was "very unsteady, having to bring her arms up, kind of moving outside the lines." Officer Terry recalled that at some point, the Defendant removed her shoes in order to attempt the field sobriety tests and that, as she was removing her shoes, she "almost [fell] over." Officer Terry testified that the Defendant "attempted to stand on one leg" two or three times but "was very unsteady" and "decided she did not want to try" the test. Officer Terry recalled that prior to the one-leg stand, the Defendant said something to him about

having "a knee problem." Officer Terry then had the Defendant count backwards starting at forty-nine and ending at thirteen. The Defendant "completely missed [forty-nine], [and] went straight to [forty-eight]." Officer Terry testified that he believed the Defendant "missed another number or two somewhere along the way." Based upon her performance on the field sobriety tests, Officer Terry arrested the Defendant for DUI.

In addition to Officer Terry's testimony, the State introduced video of the Defendant performing the field sobriety tests. The video showed that before administering the walk-and-turn test, Officer Terry asked the Defendant if she had any "knee problems or back problems." The Defendant responded, "A little bit of all, but." The Defendant did not elaborate any further about any medical conditions that would have prevented her from doing the field sobriety tests. The Defendant then removed her shoes and complained about her feet being "wet." The Defendant stumbled twice while removing her shoes. The Defendant was unable to maintain her balance and stand straight when she placed her right foot in front of her left foot. Officer Terry instructed the Defendant to stand with her feet in that position until he told her to begin the test; however, the Defendant repeatedly ignored this instruction. The video showed that the Defendant was unable to walk in a straight line while placing one foot in front of the other and was generally very unsteady while attempting the walk-and-turn test.

The video then showed Officer Terry attempting to administer the one-leg stand to the Defendant. After Officer Terry instructed the Defendant on the test, the Defendant stated something inaudible about her "knees" and Officer Terry instructed the Defendant to use the leg she felt most comfortable with. The Defendant briefly raised her right leg and stumbled before telling Officer Terry that she did not want to attempt the one-leg stand. The Defendant mumbled most of her statements making several of them inaudible on the recording. The video then showed Officer Terry instructing the Defendant to count backwards from forty-nine to thirteen. The Defendant attempted to begin the test before being instructed to do so and started counting at forty-eight. While counting, the Defendant skipped the number forty and took several brief pauses. The Defendant's speech was also noticeably slurred while she was counting.

The video showed that after administering the field sobriety tests, Officer Terry placed the Defendant under arrest for DUI. The Defendant then asked Officer Terry to allow two individuals, a man and a woman who appeared to be with the Defendant, to get some items out of her minivan. Officer Terry walked the Defendant and the man to the open driver's side door of the minivan. The three then walked to the passenger's side of the vehicle; however, the passenger's side door was never opened. The video concluded with the man and the woman removing items from the driver's side of the vehicle.

On cross-examination at trial, Officer Terry testified that his video recorder was on the entire time he was at the accident scene, but the video introduced into evidence at trial only showed the field sobriety tests because that was the only portion of the video Officer Terry believed "was needed for court." However, Officer Terry testified that the video did not contain any "other scenes" of the Defendant's walking around the accident scene. Officer Terry also testified that his conversation with the Defendant was not recorded on the video because he did not activate his microphone until he began the field sobriety tests. Officer Terry testified that he did not notice how the Defendant was walking after he placed her in handcuffs and reiterated that he believed the Defendant's speech was slurred on the video of the field sobriety tests. Officer Terry admitted that the Defendant did not move her body during the horizontal gaze nystagmus test and that when the Defendant stumbled while taking off her shoes, that "wasn't part of the [field sobriety] test."

Officer Terry further testified on cross-examination that the Defendant had a "calm demeanor" during the field sobriety tests and that she was "dressed in professional attire." Officer Terry recalled that the airbag in the Defendant's minivan had been deployed. However, Officer Terry testified that based upon his experience, "airbag deployment [did] not have an effect" on a person's ability to perform field sobriety tests. Officer Terry admitted on cross-examination that the Defendant stated to him that she had knee and back problems. When asked how he determined that those problems did not affect the Defendant's ability to perform the field sobriety tests, Officer Terry responded that he could not "answer that." Officer Terry also admitted that he assumed the Defendant had the necessary education to count backwards. Officer Terry further admitted on cross-examination, that while he observed the Defendant to be "very unsteady on her feet" before the field sobriety tests, his "only reason" for administering the tests was that the Defendant had "a strong smell of intoxicant on her breath."

## ANALYSIS

### I. Motion to Suppress

Prior to trial, the Defendant filed a motion to suppress all evidence gathered by Officer Terry pursuant to his investigation of the traffic accident. The Defendant argued that any information used to determine the cause of the accident and recorded in the accident report was inadmissible pursuant to Tennessee Code Annotated section 55-10-114(b), commonly referred to as the "accident report privilege." The Defendant reasoned that Officer Terry's testimony regarding her statements to him, her demeanor at the scene, the smell of alcohol on her breath, and her performance on the field sobriety tests, along with the video of the field sobriety tests, were all inadmissible because portions of the accident report form required Officer Terry to determine if the involved drivers were intoxicated. The trial

-4-

court denied the Defendant's suppression motion without making any findings of fact or conclusions of law.

On appeal, the Defendant contends that the trial court erred by denying her motion to suppress all of the evidence relating to Officer Terry's investigation of the traffic accident. The Defendant argues that section 55-10-114(b) prohibits the admission of accident reports and "all the information mentioned in" such reports. The Defendant further argues that admission of any evidence "mentioned in" the accident report would violate her constitutional right against self-incrimination because she was statutorily compelled "to cooperate with accident investigations both in writing and by interview with [the] police." The Defendant also complains that Officer Terry did not inform her of her rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and that he did not notify her that "the accident investigation had concluded and a criminal investigation had begun and [that] she was no longer compelled to cooperate." The State responds that section 55-10-114(b) only excludes the accident report itself and that Officer Terry could testify about his personal recollection of the investigation. The State further responds that completion of the accident report form did not violate the Defendant's right against self-incrimination and that Miranda warnings are not required when a person is temporarily detained at a traffic stop, even when the stop involves an investigation of intoxication.

On appellate review of suppression issues, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." State v. Talley, 307 S.W.3d 723, 729 (Tenn. 2010) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Questions about "the assessment of witness credibility, the weight and value of evidence, and the resolution of evidentiary conflicts are entrusted to the trial court" as the trier of fact. State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008). When the trial court "makes findings of fact in the course of ruling upon a motion to suppress, those findings are binding on appeal unless the evidence in the record preponderates against them." Id. However, "when the trial court does not set forth its findings of fact upon the record of the proceedings, the appellate court must decide where the preponderance of the evidence lies." State v. Bobby Killion, No. E2008-01350-CCA-R3-CD, 2009 WL 1748959, at *13 (Tenn. Crim. App. June 22, 2009), perm. app. denied, (Tenn. Oct. 26, 2009) (citing Fields v. State, 40 S.W.3d 450, 457 n.5 (Tenn. 2001)). Here, the trial court failed to make any findings of fact in the record. Additionally, a trial court's conclusions of law along with its application of the law to the facts are reviewed de novo without any presumption of correctness. Meeks, 262 S.W.3d at 722.

In order to address the Defendant's arguments, we must first briefly examine the responsibilities placed upon drivers involved in traffic accidents by Chapter 10 of the motor

vehicle code. The driver of a vehicle involved in a traffic accident that causes an injury to a person or damage to a vehicle is required to immediately stop, give aid to any injured persons, and "give the driver's name, address, and the registration number of the vehicle the driver is driving, and shall, upon request and if available, exhibit that driver's . . . driver license[] to the person struck." Tenn. Code Ann. §§ 55-10-101 to -103. Failure to do so is a criminal offense. See Tenn. Code Ann. §§ 55-10-101(b), -102(b). For traffic accidents that result in injury to a person or property damage of fifty dollars or more, drivers must "immediately, by the quickest means of communication, give notice of the accident to the local police department if the accident occurs within a municipality, otherwise to the office of the county sheriff or the nearest office of the state highway patrol." Tenn. Code Ann. § 55-10-106.

Drivers involved in accidents resulting in injury to a person or property damage in excess of $400 "shall within in twenty [] days after the accident, forward a written report of the accident to the department of safety." Tenn. Code Ann. § 55-10-107(a). This report "shall include information pertaining to the insurance policy, including the name of the insurer, of the driver and of the owner of the vehicle" and "[i]f the driver and the owner have a certificate of compliance with the Tennessee Financial Responsibility Law of 1977 . . . a copy of the certificate shall be included in the written notice." Tenn. Code Ann. § 55-10-107(c). "A person failing to make a required report commits a Class C misdemeanor." Tenn. Code Ann. § 55-10-111(c). The department of safety may require the driver to "file supplemental reports whenever the original report is insufficient in the opinion of the department." Tenn. Code Ann. § 55-10-108(a). Additionally, law enforcement officers who investigate traffic accidents are required "to forward a written report of the accident to the department" of safety within seven days of completing an accident investigation. Tenn. Code Ann. § 55-10-108(b)(1). The department of safety is required to provide accident report forms to police departments. Tenn. Code Ann. § 55-10-111(a). Section 55-10-111(a) also provides that the "written reports to be made by persons involved in accidents and by investigating officers shall call for sufficiently detailed information to disclose with reference to a traffic accident the cause, conditions then existing, and the persons and vehicles involved."

With respect to the required written reports that drivers involved in traffic accidents must file with the department of safety, section 55-10-114 provides in whole the following:

(a) All accident reports made by any person or by garages shall be without prejudice to the individual so reporting, and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes, or for the administration of the laws of this state relating to the deposit of security and proof of financial

responsibility by persons driving or the owners of motor vehicles, except that the department may disclose the identity of a person involved in an accident when the identity is not otherwise known or when the person denies having been present at the accident.

(b) No reports or information mentioned in this section shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon demand of any party to trial, or upon demand of any court, a certificate showing that a specified accident report has or has not been made to the department in compliance with law.

Tennessee courts have previously held that the purpose of the accident report privilege is to exclude information contained in accident reports which "is hearsay and is a mere opinion or conclusion not based on personal observation." McBee v. Williams, 405 S.W.2d 668, 671 (Tenn. Ct. App. 1966). Accident reports are also excluded because "if the report contains an opinion or conclusion relating to the cause of or responsibility for an accident or injury, such evidence invades the province of the jury as to the very matters to be determined." Id. Tennessee courts have also held that a witness who is otherwise qualified to testify at trial "is not subject to disqualification due to his employment as a governmental officer or official, even where his duties in his official role require him to file reports which may be inadmissible." Harper v. Davis, No. 01A01-9406-CV-00269, 1995 WL 341560, at *2 (Tenn. Ct. App. June 9, 1995); see also Graham v. Mohr, No. E2001-00824-COA-R3-CV, 2002 WL 385841, at *2 n.2 (Tenn. Ct. App. Mar. 12, 2002) (stating that while an accident report was itself inadmissible as evidence, it could be used to refresh the recollection of a witness). These previous cases have contemplated that while the accident report itself may be inadmissible as evidence, a police officer could testify as to his personal recollection of an accident scene or accident investigation. However, the Defendant contends that the text of section 55-10-114(b) extends the accident report privilege beyond the actual report to any information "mentioned in" the report.

The Defendant's argument blatantly misconstrues the plain language of section 55-10-114(b). Section 55-10-114(b) does not refer to reports and any information mentioned in those reports as the Defendant suggests. Rather, section 55-10-114(b) applies to reports and "information mentioned in this section." The plain language of the statute prohibits use of accident reports and any other information mentioned in the text of section 55-10-114 "in any trial . . . arising out of an accident." Subsection 55-10-114(a) provides that accident reports are for the "confidential use of the department" of safety and for use in "the administration of the laws of this state relating to the deposit of security and proof of financial responsibility by persons driving or the owners of motor vehicles." We interpret the phrase "information mentioned in this section" as referring to the use of accident reports in the administration of

the Tennessee Financial Responsibility Law of 1977 (Financial Responsibility Law). This interpretation is supported by the fact that determinations of fault made by the department of safety pursuant to the Financial Responsibility Law are inadmissible "in any court of law" pursuant to statute. Tenn. Code Ann. § 55-12-108(b). Accordingly, we see no reason based upon the plain language of section 55-10-114(b) to differ from the previous understanding of the statute utilized by other courts in this state that while the accident report itself is inadmissible as evidence, a police officer can testify as to his personal recollection of an accident scene or accident investigation.

The Defendant further contends that use at trial of any evidence Officer Terry gathered pursuant to his accident investigation violated her Fifth Amendment right against self-incrimination[1] due to the statutory scheme requiring drivers to file written reports regarding traffic accidents with the department of safety. This court has previously held that the "fact that the information which the operator of a vehicle is required by statute to give is elicited by an officer in the ordinary course of an accident investigation is no bar to its admission." Trail v. State, 552 S.W.2d 757, 758 (Tenn. Crim. App. 1976). This court has also held that "an officer may, in the course of an investigation of an automobile accident, make inquiry of a person to determine if he had been operating a vehicle involved in a collision without giving the Miranda advice" and that a driver's responses to such questioning are "admissible and not a violation of the Fifth [] Amendment of the United States Constitution." Id. This court's prior holdings were based upon the plurality opinion of the United States Supreme Court in California v. Byers, 402 U.S. 424 (1971). Id.

At issue in Byers was California's "hit-and-run" statute which required a driver involved in a traffic accident to "to stop at the scene and give his name and address." 402 U.S. at 425. The plurality opinion explained that in order to invoke the privilege against self-incrimination, "it is necessary to show that the compelled disclosures will themselves confront the claimant with substantial hazards of self-incrimination." Id. at 429 (internal quotation marks omitted). To make such a showing, the disclosures must be "extracted from a highly selective group inherently suspect of criminal activities" and be applied in an area of inquiry "permeated with criminal statutes – not in an essentially noncriminal and regulatory area of inquiry." Id. at 430 (internal quotation marks omitted). The Supreme Court determined that California's Vehicle Code was "essentially regulatory" and "not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents." Id. Likewise, the Court determined that the statute was "directed at the public at large" and not at a highly selective group inherently suspect of

---

[1]The Defendant makes no argument that article I, section 9 of the Tennessee Constitution should be interpreted to give broader protections than those provide in the Fifth Amendment, and we so no reason to interpret article I, section 9 as such.

criminal activities.  Id.  The plurality opinion concluded that disclosure of a person's name and address was "an essentially neutral act" and that a driver "having stopped and identified himself . . . could decline to make any further statement" or "assert a Fifth Amendment privilege concerning specific inquires."  Id. at 432-34 n.6.  The plurality opinion concluded by stating as follows:

> Although identity, when made known, may lead to inquiry that in turn leads to arrest and charge, those developments depend on different factors and independent evidence.  Here the compelled disclosure of identity could have led to a charge that might not have been made had the driver fled the scene; but this is true only in the same sense that a taxpayer can be charged on the basis of the contents of a tax return or failure to file an income tax form.  There is no constitutional right to refuse to file an income tax return or to flee the scene of an accident in order to avoid the possibility of legal involvement.

Id. at 434.

"The reported weight of authority" in other jurisdictions is that "testimony by police officers relating to admissions by drivers for the purpose of preparing automobile accident reports is admissible."  Stephens v. State, 898 S.W.2d 435, 439 (Ark. 1995) (citing Randy R. Koenders, Annotation, Admissibility of Police Officer's Testimony at State Trial Relating to Motorist's Admissions Made in or for Automobile Accident Report Required by Law, 46 A.L.R. 4th 291).  The Defendant cites the fact that there is a criminal penalty imposed on drivers who fail to file a written report with the department of safety to support the proposition that she was compelled "to cooperate with accident investigations both in writing and by interview with [the] police."  However, there is no statutory requirement that a driver "cooperate with [an] accident investigation[] . . . by interview with [the] police."  Nor is there a criminal penalty "for a motorist who refuses to answer the questions of [an] investigating officer."  Id. at 440 (discussing a similar statutory scheme).  Even interpreting section 55-10-111(a),[2] as the Defendant does, as requiring a driver to file a written report with the department of safety with "sufficiently detailed information" to determine the cause of a traffic accident, nothing in the statutory scheme would require "a person involved in an accident to answer any incriminating questions which were asked by the investigating

---

[2]Section 55-10-111(a) requires the department of safety to provide accident report forms to police departments.  The second sentence of the subsection provides that "written reports to be made by persons involved in accidents and by investigating officers shall call for sufficiently detailed information to disclose with reference to a traffic accident the cause . . . ." (emphasis added).  Given that the statute states that written reports "shall call for sufficiently detailed information," we interpret this statement as placing a requirement on the department of safety to provide forms which provide for such information rather than requiring drivers to file reports with such information.

officer."[3]  Creary v. State, 663 P.2d 226, 229 n.2 (Alaska Ct. App. 1983) (interpreting a similar statute in a similar fashion).

Furthermore, there is no evidence in the record that the Defendant was aware of or attempting to comply with her statutory duty to file a written accident report when she spoke to Officer Terry.  Nor is there any evidence that the Defendant believed that she was compelled to answer Officer Terry's questions or that Officer Terry suggested that she was required to answer his questions.  There is simply no evidence that Officer Terry compelled the Defendant's statements or that she felt compelled to cooperate.  See Stephens, 898 S.W.2d at 440.  The Defendant cites several Florida cases in support of her argument that the reporting requirement compelled her disclosures and that the accident report privilege prevented their admission at trial.  However, even under Florida law, the accident report privilege is inapplicable where a driver has been provided Miranda warnings and the driver was unaware that "he had to answer questions to provide accident information to the investigating officer."  State v. Norstrom, 613 So. 2d 437, 440 (Fla. 1993).  Again, there is no evidence that the Defendant believed that she was under a duty to cooperate with Officer Terry's investigation.

Florida courts have chosen to interpret their accident reporting statutes differently than the weight of reported authority and require Miranda warnings prior to an investigation of a driver's intoxication.  However, Tennessee courts have frequently held that a person temporarily detained for a traffic stop, even one investigating a driver's intoxication, is not considered to be "in custody" for purposes of requiring Miranda warnings.  See State v. Michael Hugo Brooks, No. W2009-00274-CCA-R3-CD, 2010 WL 481212, at *2 (Tenn. Crim. App. Feb. 11, 2010); State v. David Lane Goss, No. M2006-01467-CCA-R3-CD, 2007 WL 2200284, at *4 (Tenn. Crim. App. July 31, 2007), perm. app. denied, (Tenn. Feb. 4, 2008); State v. Mary Ann McNeilly, No. M2005-02184-CCA-R3-CD, 2006 WL 3498043, at *6 (Tenn. Crim. App. Nov. 22, 2006); State v. Roger Odell Godfrey, No. 03C01-9402-CR-00076, 1995 WL 120464, at *2 (Tenn. Crim. App. Mar. 20, 1995) (all cases citing Berkemer v. McCarty, 468 U.S. 420 (1984)).  Accordingly, we conclude that this issue is without merit and affirm the trial court's denial of the Defendant's suppression motion.

*II. Sufficiency of the Evidence*

---

[3]The statutory scheme appears to contemplate two reports being filed, one by a driver involved in a traffic accident and one by a police officer investigating the accident.  See Tenn. Code Ann. §§ 55-10-107, -108(b)(1).  There is nothing in the statutes which relieves a driver of the duty to file a written report if a report is filed by a police officer.  Again, there is no statutory requirement that a driver cooperate with a police officer's accident investigation or assist an officer in the completion of the officer's duty to file a written accident report with the department of safety.

The Defendant contends that the evidence was insufficient to sustain her conviction for DUI. Citing State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971), the Defendant argues that the State's case against her was based solely upon circumstantial evidence and that the State failed to present proof that excluded every other reasonable hypothesis save her guilt. The Defendant chiefly complains that the State failed to prove that she was intoxicated and that she was the driver of the minivan. The State responds that in State v. Dorantes, 331 S.W.3d 370 (Tenn. 2011), our supreme court overruled Crawford and held that circumstantial evidence should be treated the same as direct evidence when determining the legal sufficiency of the evidence. Based upon the direct evidence and the new standard announced in Dorantes, the State responds that the evidence was sufficient to sustain the Defendant's convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Our supreme court recently clarified that circumstantial evidence is as probative as direct evidence. Dorantes, 331 S.W.3d at 379-81. In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting Crawford, 470 S.W.2d at 612) (quotation marks omitted). Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference . . . [and] [i]f the jury is convinced beyond a reasonable doubt, we can require no more." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end,

the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The Defendant was convicted of DUI in violation Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess[.]

This court has held that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of DUI. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993) (stating that the State did not need more than the deputy's testimony to prove its DUI case).

The Defendant argues that the State presented only circumstantial evidence that she was intoxicated and that such evidence failed to excluded every other reasonable hypothesis save her guilt. However, the record before this court contains substantial direct evidence that the Defendant was intoxicated. As stated above, a police officer's testimony alone is sufficient evidence to convict a defendant of DUI. Here, Officer Terry testified that he "noticed a strong smell of an intoxicant on [the Defendant's] breath," that she was "[v]ery unsteady on her feet," and that her speech was "slurred." When Officer Terry asked the Defendant if she had been drinking that night, the Defendant responded that approximately two hours before the accident she had two, twenty-two ounce beers. Officer Terry also testified that the Defendant performed poorly on three field sobriety tests. In addition to Officer Terry's testimony, the State introduced a video recording of the field sobriety tests. The video showed that the Defendant was unsteady on her feet, unable to maintain her balance while standing with one foot in front of the other, unable to walk in a straight line, unable to attempt the one-leg stand, and that her speech was slurred during the counting test. Additionally, Ms. Scott testified that her car was on the shoulder and completely out of the

road when it was struck from behind by a minivan traveling at a high rate of speed and with no headlights on.

The Defendant argues that Officer Terry contradicted himself several times during defense counsel's cross-examination and that Officer Terry's credibility was damaged beyond repair by these contradictions. However, following a guilty verdict, this court views the evidence on appeal in a light most favorable to the State. Likewise, any conflicts in Officer Terry's testimony and any questions regarding his credibility were for the trial court to resolve, not this court. See Bland, 958 S.W.2d at 659. The Defendant also argues that her poor performance on the field sobriety tests "was possibly the result of physical and mental infirmities." However, there was no evidence presented at trial that the Defendant had any physical or mental problems that would have prevented her from performing the field sobriety tests beyond the Defendant's response when asked by Officer Terry if she had any knee or back problems that she had "[a] little bit of all, but." Accordingly, we conclude that the evidence was sufficient to establish that the Defendant was intoxicated. See State v. Troutman, 327 S.W.3d 717, 726 (Tenn. Crim. App. 2008) (concluding that the evidence was sufficient to sustain the defendant's conviction for DUI, first offense, where police officer had to "wave down" the defendant to get him to stop at a roadblock, the defendant's speech was slurred, the defendant smelled of alcohol, the defendant failed three field sobriety tests, and the defendant admitted to drinking a "hot beer" that night).

The Defendant also argues that the State's evidence establishing that she was the driver of the minivan was circumstantial and that it failed to exclude every other reasonable hypothesis save her guilt. The State presented Officer Terry's testimony that the Defendant "did not deny being the driver" of the minivan and Ms. Scott's testimony that a woman approached her after the accident to ask if she was "okay." The Defendant complains that this evidence failed to rule out "the reasonable hypothesis that the [D]efendant was covering for one of her children." However, the State correctly notes that the Defendant's argument is based entirely on legal precedent explicitly overruled by our supreme court in Dorantes. The Defendant's assertion that because her conviction was based in part upon circumstantial evidence, the State was required to rule out every reasonable hypothesis except that of guilt is simply no longer the law in Tennessee. Instead, circumstantial evidence alone is sufficient to sustain a conviction and is treated the same as direct evidence when weighing the sufficiency of the evidence. See Dorantes, 331 S.W.3d at 381. The Dorantes standard recognizes that the trier of fact is in a better position than this court to weigh the evidence and decide between the competing plausible theories presented by the State and a defendant. Accordingly, this court's duty on appeal is "not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." Sisk, 343 S.W.3d at 67.

This court is troubled by the continued reliance on legal precedent which has been explicitly overruled and which is no longer representative of the current state of the law in Tennessee. See State v. Maurice O. Byrd, No. M2010-02405-CCA-R3-CD, 2012 WL 5989817 (Tenn. Crim. App. Nov. 29, 2012); State v. Marvin Christopher Long, No. M2010-01491-CCA-R3-CD, 2012 WL 3611741 (Tenn. Crim. App. Aug. 22, 2012); State v. Jeffery Martin, No. M2009-01673-CCA-R3-CD, 2012 WL 1680850 (Tenn. Crim. App. Apr. 30, 2012); State v. Oscar Dimery, No. E2010-01430-CCA-R3-CD, 2012 WL 171939 (Tenn. Crim. App. Jan. 20, 2012). It was the province of the trier of fact to weigh the evidence, judge the credibility of the witnesses, resolve any conflicts in the testimony, and choose between the competing theories presented by the State and the Defendant. Based upon the foregoing evidence, the State established a reasonable inference that the Defendant was the driver of the minivan involved in the traffic accident with Ms. Scott. The trial court was free to accept this reasonable inference and reject the Defendant's competing theory that either the man or the woman seen with the Defendant on the video of the field sobriety test was the driver. This is especially true given the fact that there is no evidence in the record to support such a theory. Accordingly, we conclude that the evidence was sufficient to conclude that the Defendant was the driver of the minivan and to sustain her conviction for DUI.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-14-