IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2018

**STATE OF TENNESSEE v. JAMAL P. HICKS**

**Appeal from the Circuit Court for Montgomery County
No. 63CC1-2016-CR-158  William R. Goodman, III, Judge**

———————————————————

**No. M2017-01628-CCA-R3-CD**

———————————————————

Defendant, Jamal P. Hicks, was convicted of sexual battery in 2004.  As a result of that conviction, Defendant was declared a registered sex offender and required to comply with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004. T.C.A. § 40-39-201. et seq.  In 2016, Defendant was convicted by a jury of falsifying a registration form, failing to report a change in circumstance on a registration form, and perjury.  As a result, he received an effective sentence of three years.  On appeal, Defendant argues that the trial court improperly admitted three exhibits at trial and that the evidence was insufficient to support the convictions.  After a thorough review, we conclude that the trial court improperly admitted several exhibits at trial and, as a result, the evidence is insufficient to support the judgments.  Consequently, Defendant's convictions are reversed and vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed
and Vacated**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and ROBERT L. HOLLOWAY, JR., JJ., joined.

Adrienne H. Welchance (on appeal) and Joe Tutro (at trial), Clarksville, Tennessee, for the appellant, Jamal Pele Hicks.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Brett Ligon, District Attorney General; and Lee Willoughby, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted by the Montgomery County Grand Jury in February of 2016 for one count of violating the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("the Act") by "[f]alsification of a TBI registration form" as stated in Tennessee Code Annotated section 40-39-208(a)(2); one count of violating the Act by "[f]ailure to timely disclose required information to the designated law enforcement agency" as stated in Tennessee Code Annotated section 40-39-208(a)(3); and one count of perjury on a Tennessee Sexual Offender and Violent Sexual Offender Registration/Verification Form as prohibited by Tennessee Code Annotated section 39-16-702(b)(3).

At trial, Defendant stipulated that he had been on the sex offender registry for ten years prior to the indictment at issue in this case as a result of a sexual battery conviction. Jeffrey Morlock of the Montgomery County Sheriff's Office testified that he was "in charge of running the sheriff's office sex offender registration program" and had served in that capacity for twelve years. Investigator Morlock explained that when someone was placed on the sex offender registry, the office gave each person a copy of the full statute as well as a "sex offender instruction form." Each defendant was required to sign and acknowledge that they had read and understand the rules "as well as the statement about perjury." Investigator Morlock explained that the form included the following language:

> "Section H, please read carefully before signing." It says: "Under penalty of perjury I declare information provided on this form is true and correct"; and it says: "T[.]C[.]A[. §] 39-16-702(b)(3)," then below that there's a spot for initials and it says: "I acknowledge I have read and understand the requirements."

Investigator Morlock explained the reporting and registration requirements for sex offenders. Each offender was given a copy of the registration requirements and rules at the time of the initial reporting date. As part of the registration requirement, Defendant was required to report "anything that change[d] in [his] life" within 48 hours. For example, Defendant was required to report any change in where he lived, where he worked, his contact information, and the vehicles he operated in addition to other information. Specifically, the rules portion of the registration form informed defendants that they were required to report the following within 48 hours:

> This includes, but is not limited to, changes in the offender's primary or secondary residences, mailing address, vehicle descriptions, vehicle information numbers and license tag numbers (this includes both vehicles used or owned by an offender), the complete listing of the offenders electronic mail address information or any instant message, chat or other internet communication name or identity that the person uses or intends to

use, minors residing in the primary or secondary residence, complete name and all aliases, including, but not limited to, any names that the offender may have had or currently has by reason of marriage or otherwise, including pseudonyms and ethnic or tribal names, copies of all passport and immigration documents, professional licensing information that authorizes an offender to engage in an occupation or carry out a trade or business, and any other registration, verification and tracking information contained on the registration form.

Investigator Morlock supervised Defendant as a registered sex offender starting in 2006. Investigator Morlock opined that Defendant had reported at least nineteen times but admitted that he was not present each time Defendant reported and signed the form. Investigator Morlock recalled that Defendant had issues with compliance in reporting on three or four occasions over the years but that none of the compliance issues resulted in convictions.

At the time of the actions giving rise to the indictment in this case, Defendant was homeless. Investigator Morlock explained that homeless offenders were "required to report every month in person to verify the forms are true and accurate." Investigator Morlock recalled that Defendant never failed to report while he was homeless.

Defendant reported on October 30, 2015. Defendant did not report any changes on the form. The form filled out by Defendant on October 30, which was entered into evidence, reflects Defendant's handwritten name, date of birth, social security number, and the word "Homeless" written across the box where the primary address would ordinarily appear. Defendant appeared to have filled out only the portions of the form that were circled. The rest of the form remained blank. Defendant's signature appears on the last page of the form along with the signature of Peggy Macias. It is unclear from the record who circled portions of the form and/or why those portions are circled. Investigator Morlock testified that Defendant "never reported a vehicle" despite the normal practice of going through the list of reporting requirements with a defendant at every visit. Investigator Morlock admitted that he was not present at the time Defendant signed the reporting form at issue herein and admitted that he was not sure if Defendant was told to merely "initial here where it's circled and then sign at the end" or if he was instructed to fill out the entire form.

Investigator Morlock testified that on November 19, 2015, he became aware that Defendant purchased a vehicle. Investigator Morlock secured a "car invoice and bill of sale from Johnson Auto Sales" in Clarksville, Tennessee. According to the document, "JP Hicks" purchased a 2006 Black Chevrolet Impala on October 20, 2015, for $3500.85. The address listed on the "car invoice and bill of sale" was 425 Helton Drive in

Clarksville, Tennessee. The "car invoice and bill of sale" was not signed or notarized. Counsel for Defendant objected to the introduction of the document on the basis that it was hearsay. Counsel for Defendant argued that the document was a business record that was not self-authenticating and the document was not being entered into evidence via a custodian of records and, therefore, it was inadmissible hearsay. The trial court overruled the objection. The document was entered into evidence as Exhibit 5.

Agent Will Evans of the Clarksville Police Department testified that he was called out to a traffic stop in November of 2015 to a 2006 Chevrolet Impala that was registered to Defendant. There was no testimony that Defendant was in the vehicle or driving the vehicle. In fact, no proof was presented as to the identity of a driver or passengers of the 2006 Chevrolet Impala, or where the vehicle was when stopped by an unnamed officer. No proof was presented as to why Agent Evans was called to the stop.

During the traffic stop, Agent Evans searched the vehicle and took photographs of both sides of a temporary tag affixed to the rear of the vehicle. On the back of the temporary tag in the field marked "issued to" appeared the name "JP Hicks" with an address of 425 Helton Drive. Counsel for Defendant objected to the introduction of the photographs of the temporary tag, arguing that it was hearsay. The trial court overruled the objection, and the photographs of the temporary tag were admitted into evidence as Exhibit 6.

Agent Evans identified an envelope containing other items that he recovered from the car. There were three pieces of paper inside: "a car invoice and bill of sale from Johnson Auto Sales"[1]; a piece of paper with "four lines, dates and names and that . . . cash has been received"; and a piece of paper containing "some sort of guidelines in the name of Jamal Hicks in a business known as Cars." The paper with four lines contained the following typed statement:

> Oct. 20, 2015
> I, WILLIAM D. SATTERFIELD HAVE RECEIVED FROM J P HICKS $3500.00 CASH FOR 2006 CHEVY IMPALA VIN NUMBER ZG1WB55K169181502 PAID IN FULL.

There was a signature below the typed statement. It appears to be signed by a "William D," but the last name is illegible. Again, counsel for Defendant objected to the introduction of the documents as hearsay, arguing:

---

[1] This document appears to be identical to the car invoice and bill of sale obtained from the dealership by the officer.

- 4 -

These are business records and business records have to have the affidavit of the custodian or they have to be self-authenticated through a custodian that's seen that. So that's with this; this, in addition, is signed by this person. I don't have a chance to cross-examine that person about that bill of sale or anything else. So, you know, if it's a - - sixth amendment on that also. And, again, hearsay on it; I'm not able to cross-examine this person either, the custodian that created this for the salesman. So that's the objection made, sixth-amendment, right to cross the witness. . . .

The trial court overruled the objection, finding that the documents were not business records and, therefore, not hearsay. The car invoice and bill of sale and document referencing William Satterfield were introduced as Exhibit 7.

After Agent Evans's testimony, the State rested its case. Counsel for Defendant made a motion for judgment of acquittal. The trial court overruled the motion. Defendant declined to testify and did not present any witnesses. The jury convicted Defendant on all counts as listed in the indictment. At a sentencing hearing, Defendant was sentenced as a Range II offender to a sentence of three years, to serve, on each count to run concurrently.

Defendant filed a motion for new trial.[2] At the hearing on the motion for new trial, subsequent trial counsel argued that the trial court erred in admitting Exhibits 5, 6, and 7 because they were hearsay. The State conceded that Exhibit 5, the bill of sale from the car dealership, was a business record and was not properly admitted at trial. As to the other documents, the State argued that their admission was harmless. The trial court commented:

All right. I remember when we tried this case that, as relates to [E]xhibits [6] and [7], which was temporary - - temporary tag - - or actually a photograph of a temporary tag and the bill of sale, for purposes of establishing the failure of Defendant to report his residence.[3] I believe there was sufficient evidence to support the jury's verdict as to the

---

[2] Trial counsel also filed a motion to withdraw. Trial counsel was permitted to withdraw and subsequent trial counsel was appointed.

[3] We find it noteworthy that the trial court discusses the failure of Defendant to report his residence as the crux of the State's position at trial; however, on appeal, the State's argument centers around whether Defendant owned and failed to report ownership of a vehicle and whether that failure to report constituted perjury on the registration form. We acknowledge Defendant's marking "Homeless" on the registration form, if untrue, could be proof of perjury. However, save the temporary tag and bill of sale, there was no evidence admitted to establish Defendant had a residence.

admission of [E]xhibit [5]. Which I believe was [a duplicate original of] the bill of sale; is that right?

. . . .

. . . [5] - - [E]xhibit [5] and [6], which is the temporary tag, we've established the issue about his failure to report his residence. [7], which was the record from the car lot, was not introduced as a business record, but I don't see that as being an error that would have changed the verdict in this case. It's harmless. Therefore, your motion is denied.

Subsequent trial counsel also argued that the trial court should grant a motion for arrested judgment because the indictment did not allege sufficient facts to identify the actions which amounted to perjury. The trial court denied the motion.

*Analysis*

*I. Admissibility of Exhibits*

On appeal, Defendant argues that Exhibits 5, 6, and 7 were improperly admitted by the trial court because they all constituted hearsay and did not "fall under any exception to the hearsay rule as presented at trial." The State disagrees, arguing that the documents were not hearsay because (1) the documents were admitted to show Defendant's knowledge that he owned a car at the time he represented on the registration form that he did not own a car; (2) the bill of sale and receipt were "legally operative document[s] with a meaning independent of the truth of the words [they] displayed"; and (3) the documents acted as admissions by a party opponent. We will examine each exhibit in turn.

The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion in the absence of a clear showing of abuse appearing on the face of the record. *See State v. McCoy*, 459 S.W.3d 1, 8 (Tenn. 2014); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993). An abuse of discretion occurs when the trial court (1) applies an incorrect legal standard; (2) reaches an illogical or unreasonable decision; or (3) bases its decision on a clearly erroneous assessment of the evidence. *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Of course, in order to be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence.

*See, e.g.*, *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

With regard to demonstrative and physical evidence, Rule 901(a) of the Tennessee Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." The testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient. Tenn. R. Evid. 901(b)(1). Once this foundation has been established, the "trier of fact then makes the ultimate decision of whether the item is actually what it purports to be." Cohen et al., *Tennessee Law of Evidence* § 9.01[2][a].

> Authentication − establishing that an item is what it is claimed to be − is one essential step toward the admissibility of the item. However, as the philosophers would say, it is a necessary step but not a sufficient step. The remaining rules of evidence and all other applicable laws must also be satisfied before the item is admissible into evidence.

Cohen et al., *Tennessee Law of Evidence* § 9.01[2][b].

The "remaining rule[] of evidence" applicable herein is hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). A written assertion is a "statement" under the hearsay rule. Tenn. R. Evid. 801(a); *see State v. Franklin*, 308 S.W.3d 799, 811 (Tenn. 2010). In general, hearsay statements are inadmissible unless they satisfy one of the enumerated exceptions. Tenn. R. Evid. 802; *see* Tenn. R. Evid. 803, 804. "The standard of review for rulings on hearsay evidence has multiple layers." *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015), *cert. denied*, 136 S. Ct. 335 (Oct. 13, 2015). The "factual and credibility findings" that the trial court makes when determining whether a statement is hearsay are "binding on a reviewing court unless the evidence in the record preponderates against them." *Id.* (citing *State v. Gilley*, 297 S.W.3d 739, 759-61 (Tenn. Crim. App. 2008)). After making factual findings, the trial court must determine "whether the facts prove that the statement (1) was hearsay and (2) fits under one of the exceptions to the hearsay rule." *Id.* (citing *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); *Keisling v. Keisling*, 196 S.W.3d 803, 721 (Tenn. Ct. App. 2005)). "These are questions of law subject to de novo review." *Id.*; *see also Gilley*, 297 S.W.3d at 760 (determining that review of trial court's classification of a statement as hearsay is a question of law).

## A. Exhibits 5 and 7

During the direct examination of Investigator Morlock, counsel for the State asked when the investigator was "made aware of the fact that [Defendant] had a vehicle that he had not reported." Investigator Morlock replied, "November 19th[,] 2015." Counsel for Defendant objected to the date, arguing that without some kind of foundation it was hearsay. Counsel for the State explained that Investigator Morlock was "provided a purchase sale form from a drug agent" on November 19, 2015. The trial court commented that the investigator could "identify a bill of sale that was furnished to him." Counsel for Defendant argued that the bill of sale was still hearsay because it was "being offered for the truth." The trial court commented that "at that point it's not being offered [for] the truth of the matter. That's just the document. . . ." The trial court went on to opine the document was being offered to show "[Defendant] knows he bought the car; he knows he received a copy of this document that purports to be a bill of sale, but that - - at that point the date of - - of acquisition, of purchase, has been established." Counsel for Defendant replied, "Okay. So the date is not established at that point. That's fine. All right. Thank you."[4]

The direct examination of Investigator Morlock continued. He explained that he did not receive the bill of sale from Agent Evans but rather procured the bill of sale directly from the car dealership. Counsel for Defendant again objected to the introduction of the document, arguing that the document was a "business record" that was not self-authenticating. The trial court overruled the objection. The bill of sale was introduced as Exhibit 5. It reflected a date of October 20, 2015, as the purchase date of the vehicle. Investigator Morlock went on to explain that Defendant had until the end of business on October 22, 2015, to report the purchase of the vehicle.

Next, during the testimony of Agent Evans, the State sought to introduce "three pieces of paper" that were found in the "interior of the vehicle" during the traffic stop. The first piece of paper was a "car invoice and bill of sale from Johnson Auto Sales." The second piece of paper contained "four lines, dates and names and that . . . cash has been received. And the [third] was a notice - - some sort of guidelines in the name of Jamal Hicks in a business known as Cars." Counsel for Defendant objected on the basis that the documents were hearsay. During a bench conference, both counsel for the State and Defendant informed the trial court that they were unaware of the existence of the "third" piece of paper. The State did not think that the third page was "relevant" so it was removed from consideration. The trial court "did not understand" Defendant's hearsay objection. Counsel for Defendant argued that the documents were business

---

[4] We are somewhat confused as to this statement from trial counsel in response to the trial court's understanding that the bill of sale was being introduced to show that Defendant knew he bought the car on a certain date.

records and had to be introduced through a custodian so that Defendant could cross-examine someone about the authenticity of the documents. In addition, counsel for Defendant argued that the introduction of the document accompanying the bill of sale violated the sixth amendment right to confrontation because the person who signed the document was not present to testify. The trial court found that the documents were not business records but that the documents went "to the proof of the ownership of the vehicle." The trial court went on to advise counsel for Defendant, "Of course, you're allowed to put on proof to rebut." The document was introduced as Exhibit 7.

The trial court initially determined that the bill of sale obtained from the dealership by Investigator Morlock, Exhibit 5, and the bill of sale found in the interior of the vehicle, Exhibit 7, were not hearsay. In our view, both Exhibits 5 and 7 were admitted for the truth of the matter asserted − to prove that Defendant owned a vehicle on a certain date. The State argues on appeal that the bill of sale was offered to "show [Defendant's] *awareness* that he owned a vehicle on October 30, 2015, the time of his false statement." If we adopted the hyper-technical, hair-splitting application of the hearsay rule argued by the State, the resulting endless ways to circumvent the hearsay rule would render it useless. In our view, this is the same thing as introducing the bill of sale to show that Defendant owned a car, the very truth of the matter asserted. Therefore, both Exhibits 5 and 7 are hearsay.

Moreover, we determine that either copy of the bill of sale does not fit within any exception to the hearsay rules. There was some discussion at trial that either exhibit could be admitted via the hearsay exception embodied in Tennessee Rule of Evidence 803(6), also known as the business records exception. This exception is rooted in the common understanding that records kept in the ordinary course of business are inherently trustworthy and reliable. *Hill v. National Life & Accident Ins. Co.*, 11 Tenn. App. 33, 37-38 (1929). Tennessee Rule of Evidence 803(6) provides that records of regularly conducted activities are not excluded under the hearsay rule and includes the following as records of regularly conducted activities:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, . . . .

We have no trouble in concluding that a bill of sale for a vehicle is a business record. According to the rule, a business record may be admitted as an exception to the hearsay rule through "the testimony of the custodian or other qualified witness." Tenn.

R. Evid. 803(6). Without testimony from the record's custodian, a business record may be admissible pursuant to Tennessee Rule of Evidence 902(11), which requires "an affidavit of its custodian or other qualified person" that the record "(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice."

In this case, there was neither an assertion on behalf of the State that Investigator Morlock was employed as the record's custodian for Johnson Auto Sales, nor did he testify as to his knowledge of their record keeping procedure. Similarly, Agent Evans did not testify as a record's custodian for Johnson Auto Sales. Moreover, neither bill of sale was accompanied by an affidavit from the record's custodian or "other qualified person" that complied with Tennessee Rule of Evidence 902(11). Thus, Exhibit 5 and Exhibit 7 were not properly admitted into evidence by the trial court.[5]

## B. Exhibit 6

During the testimony of Agent Evans, the State introduced Exhibit 6, photographs of each side of a temporary tag on a 2006 Chevy Impala. Agent Evans explained that he was called out to a traffic stop in November of 2015. During his investigation, he took photographs of the temporary tag. The tag listed that it was "issued to" JP Hicks with an address of "425 Helton Drive." Counsel for Defendant objected on the basis that the "information contained on the tag" was hearsay. The trial court overruled the objection without explanation.

With respect to Exhibit 6, the photographs of the temporary tag, we again determine that the trial court erred by determining that the evidence was not hearsay. In our assessment, the temporary tag was an out of court statement introduced to prove the truth of the matter asserted. Explained differently, the temporary tag was introduced for the sole purpose of showing that Defendant owned a vehicle and lived at 425 Helton Drive on October 30, 2015, the date on which he completed the Sex Offender Registry reporting form which led to his indictment. As such, the temporary tag was hearsay. We have been unable to identify any exception to the hearsay rule under which the temporary tag would be admissible.

We acknowledge that in *State v. Walter Collins*, No. W2016-01819-CCA-R3-CD, 2018 WL 1876333, at *14-15 (Tenn. Crim. App. Apr. 18, 2018), *perm. app. denied*

---

[5] We acknowledge that there was some discussion, and even a concession on the part of the State at the hearing on the motion for new trial, that Exhibit 5 was improperly admitted hearsay. The trial court, however, upheld its ruling on the admission of the evidence.

(Tenn. Aug. 8, 2018), a panel of this Court determined that a temporary tag on a car that was found at the scene of the crime was admissible to show the car belonged to the codefendant even though it was hearsay. In *Walter Collins*, the court determined that the "temporary tag contain[ed] a written statement, namely a name and address," and that "the State offered the information on the temporary tag for its truth, namely that the tag for the Monte Carlo was issued to [the codefendant]" and tended to show that the codefendant was at the crime scene. *Id.* at \*15. The court concluded that the tag itself was hearsay but deemed the tag admissible as a public record under Tennessee Rule of Evidence 803(8) and/or as a self-authenticating document under Rule 902(1), (7), or (10). *Id*. We agree that the tag in *Walter Collins* was hearsay. As we will explain below, however, we distinguish the temporary tag at issue in this case from the apparent tag at issue in *Walter Collins*.

While the temporary tag in this case is certainly relevant, we decline to find the temporary tag is a self-authenticating document under Tennessee Rule of Evidence 902(1), (7), or (10) for the following reasons. Rule 902(1) is entitled "Domestic Public Documents Under Seal" and provides:

> A document bearing a seal purporting to be that of the State of Tennessee, the United States (or of any other state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands), or of a political subdivision, department, office, or agency thereof, and a signature purporting to be an attestation or execution.

Here, the temporary tag has a seal from the Tennessee Department of Revenue, but it does not have a signature "purporting to be an attestation or execution" as required by the rule. This provision for self-authentication does not apply to a temporary tag that has been completed to indicate the name of the person to whom the tag was issued, the date upon which it was issued, and the address of the person to whom it was issued where that tag is not signed. *See State v. Troutman*, 327 S.W.3d 717, 724 (Tenn. Crim. App. 2008) (noting that if a "certificate is to be self-authenticated under [R]ule 902(1), it must bear a seal of a domestic governmental agency and a signature purporting to be an attestation of execution").

Rule 902(7), entitled "Trade Inscriptions and the Like," provides that "[i]nscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control or origin" are self-authenticating. The Tennessee Supreme Court has determined that printed cash register receipts bearing the name and address of the issuing store were admissible in a murder case under this Rule. *State v. Reid*, 91 S.W.3d 247, 296 (Tenn. 2002), *reh'g denied* (Tenn. Dec. 19, 2002). The

receipts, seized from the defendant's residence, were admitted to show that the defendant had spent a "large amount of money in a short period of time after the murders despite the fact that he was in dire financial trouble at the time." *Id.* at 296. In our view, a blank temporary tag is a self-authenticating document because it is a document used by the State of Tennessee in the course of business that bears information indicating the ownership or the origin of the temporary tag. However, once that temporary tag has been filled out and altered by the car dealership, it is no longer self-authenticating because the information written or typed into the blanks on a temporary tag, presumably by someone at the car dealership, are not statements of the State that would be authenticated by a trade inscription showing ownership by the State or origin from the State.

Lastly, Rule 902(10), entitled "Presumptions Under Acts of Congress or the Legislature," provides that "[a]ny signature, document, or other matter declared by Act of Congress or the Tennessee Legislature to be presumptively or prima facie authentic" are self-authenticating. We are unaware of any Act of Congress or the Tennessee Legislature that proclaims a temporary tag to be "presumptively or prima facie authentic."

Even more important than our conclusion that the temporary tag is not a self-authenticating document is our conclusion that the temporary tag does not comply with the public records exception to the hearsay rule. Tennessee Rule of Evidence 803(8) provides that the following information is not excluded by the hearsay rule:

> *Public Records and Reports.* Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, records, reports, statements, or data compilations in any form of public offices or agencies setting forth the activities of the office or agency or matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel.

Temporary operation permits are issued by the Department of Revenue to "an applicant desiring to operate a motor vehicle otherwise subject to registration" for a temporary period of thirty days under Tennessee Code Annotated section 55-4-115. "The commissioner or the commissioner's designee is authorized to prescribe by regulation the method by which temporary operation permits shall be issued." *Id.* The county clerk acts as a deputy to the registrar of motor vehicles. T.C.A. § 55-6-104(a). We acknowledge that a blank temporary tag, issued to an applicant at the car dealership from the Tennessee Department of Revenue and containing the seal of the State of Tennessee is most likely a public record befitting the protection of Rule 803(6) as an exception to the hearsay rule. However, in our view, once the items on the temporary tag are filled in, presumably by someone at the dealership, the "circumstances of preparation indicate lack

- 12 -

of trustworthiness" unless the preparer of the document is present to testify as to the document's veracity. For whatever reason, the State did not present a preparer to testify as to the document's veracity.

Moreover, it does not appear that the information contained on the temporary tag is reported to or kept anywhere that would be deemed a public office.[6] Therefore, in our view, a completed temporary tag introduced to show the truth of the matter asserted, i.e. the name or address of the person to whom it was issued, cannot be admitted as a public record because the circumstances of preparation indicate a lack of trustworthiness. Much of the information included on the temporary tag came from a private business, the car dealership, and not a public office or agency. That information was the evidence that was being offered for the truth of the matter asserted – that Defendant was the owner of the vehicle and that he lived at 425 Helton Drive. Thus the temporary tag, as altered by the car dealership, lacked trustworthiness and the trial court erred in admitting it.

Improperly admitted evidence is reviewed under a non-constitutional harmless error analysis. *State v. Jeff Carter*, No. M2009-02399-CCA-R3-CD, 2010 WL 5343212, at \*13 (Tenn. Crim. App. Dec. 16, 2010) (citing *State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003)), *no perm. app. filed*. In determining whether a non-constitutional error is harmless, "Tennessee law places the burden on the defendant who is seeking to invalidate his or her conviction to demonstrate that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" *Id.* at 372 (quoting Tenn. R. App. P. 36(b)). While substantial evidence of the defendant's guilt makes it difficult for "the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial," the harmless error inquiry "does not turn upon the existence of sufficient evidence to affirm a conviction or even a belief that the jury's verdict [wa]s correct." *Id.* Rather, "the crucial consideration is what impact the error may reasonably be taken to have had on the jury's decision making." *Id.* Here, because we have determined that Exhibits 5, 6, and 7 were all improperly admitted by the trial court, and these exhibits formed the lion's share of the State's case against Defendant, we cannot find the error harmless. The only thing left to determine is whether the remaining evidence presented by the State is sufficient to support any of the convictions. Tenn. R. App. P. 36(b).

## II. Sufficiency of the Evidence

---

[6] Temporary tags are, obviously, completely different than the actual registration of a vehicle. Vehicle registrations are filed by "[t]he department" after being received from the county clerk and kept on record for a "period of at least five (5) years" as set forth in Tennessee Code Annotated section 55-4-106. Vehicle registrations would likely qualify as public records.

Defendant argues that the evidence is insufficient to support the perjury conviction because there was no testimony at trial that Defendant "purchased the vehicle in his name and failed to report such with the intent to deceive." The State disagrees, arguing that the signed sexual offender registration form "on which [Defendant] did not declare his possession of a vehicle," when viewed in conjunction with the bill or sale and temporary tag, prove that Defendant was guilty of perjury. Though Defendant does not specifically challenge his remaining convictions for violating the sex offender registry, we hold that the properly admitted evidence is insufficient to support all of Defendant's convictions in this case.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). "In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *Duchac v.State*, 505 S.W.2d 237, 241 (Tenn. 1973)). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Defendant was convicted in Count 1 of failing to timely report a change of information as required by Tennessee Code Annotated section 40-39-203(a). *See* T.C.A. § 40-39-208(a)(3). Defendant was convicted in Count 2 of "unlawfully, feloniously, and knowingly" falsifying information on a sex offender registration form. *See* T.C.A. § 40-39-208(a)(2). Defendant was convicted in Count 3 of perjury. Perjury, as relevant here, is making, with the intent to deceive, a "false statement, not under oath, but on an official

document required or authorized by law to be made under oath and stating on its face that a false statement is subject to the penalties of perjury." T.C.A. § 39-16-702(a)(3). A sex offender registration form may qualify as such an official document. *See* T.C.A. § 39-16-702(b)(3).

Viewing the evidence in a light most favorable to the State, without the admission of Exhibits 5, 6, or 7, the proof shows that Defendant reported on October 30, 2015, as required by statute. At that time, Defendant filled out the portions of the sex offender registry that were circled, including his name, date of birth, and social security number in "Section A – Registrant Information" and indicating "HOMELESS" in the portion of Section B asking for his address. All other portions of the form were left blank, including "Section C" asking for information for any "Vehicle, Mobile Home, Trailer or Manufactured Home, Vessel, Live-Aboard Vessel, or Houseboat." Additionally, Defendant initialed that he had "read and underst[oo]d the requirements." An "X" appears next to a statement that the "requirements h[ad] been read to [Defendant] and [he] underst[oo]d the requirements." The form was signed and dated by Defendant and by the reporting officer "Peggy Macias." The State did not present Ms. Macias as a witness. The State called only two witnesses, neither of whom was present when Defendant completed the registration form on October 30, 2015. "Section I" of the registration form contains a statement warning Defendant that any "person who, with the intent to deceive, makes any false statement on the TBI Registration Form is guilty of the felony offense of perjury." Without any proof to show that the actual information on the form – i.e., Defendant's name, date of birth, social security number, or his status as "HOMELESS" – are false or that Defendant had the intent to deceive, the evidence is insufficient to support his conviction for perjury. Moreover, there is no proof that Defendant failed to report a change in information or that he falsified any information on the form. Consequently, the judgments of the trial court are reversed, and Defendant's convictions are vacated.

### *Conclusion*

Because the trial court erred in admitting hearsay evidence at trial, the remaining evidence is insufficient to support Defendant's convictions. As a result, the judgments of the trial court are reversed, and Defendant's convictions are vacated.

_____
TIMOTHY L. EASTER, JUDGE