GENEVA HILL v. NATIONAL LIFE & ACCIDENT INSURANCE CO., INC.

Western Section. November 15, 1929.

Petition for Certiorari denied by Supreme Court, March 1, 1930.

34

Floyd Creasey, of Memphis, for plaintiff in error.
Ewing, King & King, of Memphis, for defendant in error.

SENTER, J. For convenience we will refer to the parties as in the court below, Geneva Hill, plaintiff, and National Life & Accident Ins. Co., Inc., defendant.

The suit by plaintiff is on a policy of life insurance issued by the defendant on the life of Gertrude Sanford, on April 4, 1927, for the amount of $156. The insured died August 12, 1927, in a hospital in Memphis. Plaintiff was named as beneficiary in the policy. A few days after the death of the insured plaintiff filed a claim with the authorized agents of defendant at its offces in Memphis, with proof of death. As a part of the proof of death and in compliance with the provision contained in the policy the certificate of the attending physician was filed with the company by the plaintiff.

The application for the insurance was signed by the insured. The form of policy was of the type referred to as "industrial insurance" and is issued on small weekly premiums at the rate of ten cents per week. Medical examination under this form of insurance

was not required by the defendant. The application for the insurance signed by the insured contained a number of questions and answers. Question 24 and the answer thereto is as follows: "Q. What medical or surgical attention have you had in the last five years? Date. Duration. Doctor." The answer to this question as appears from the application. is "None".

The application also contains the following provisions: "I hereby apply for insurance for the amount herein named, and I declare that the answers to the above questions are complete and true, and were written opposite the respective questions by me, or strictly in accordance with my directions. I agree that said answers, with this declaration, shall form the basis of a contract of insurance between me and the National Life & Accident Ins., Co., and that the policy which may be granted by the company in pursuance of this application subject to the conditions and agreements contained in such policy. I further agree that no obligation shall exist against said company on account of this application, although, I may have paid premiums thereon, unless said company shall issue a policy in pursuance thereof, and the same is delivered to me. . . ."

There is a provision in the policy as follows:

"No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health. Should the proposed insured not be alive or not be in sound health on the date hereof, any amount paid to the company as premiums hereon shall be returned."

The premiums on the policy had been regularly paid up to the time of the death of the insured.

The defense made by the defendant is based solely on the ground of an alleged breach of warranty or representation contained in the application and at the time the policy was delivered, to the effect that the insured was in sound health at the time the application was signed and at the time the policy was issued and delivered, and that she had not truthfully answered question 24 in the application above quoted.

At the trial of the case the superintendent of the Memphis office of defendant offered in evidence the certificate of the last attending physician, as having been furnished by the plaintiff as a part of the proof of death of the insured. The introduction of this certificate was objected to by the plaintiff, and the objection was overruled by the court and the certificate of the attending physician furnished by plaintiff as a part of the proof of death was admitted as evidence. From this certificate it appears that the deceased was sick four days in the hospital, and had been sick for four years, from the history of the case. According to the statement of the physician filed as a part of the proof of death, under

question 10, the physician states the cause of death to be: "Bilateral chronic salpingitis,—pelvic peritonitis, supervaginal hysterectory—shock." The statement further recites: "Duration from personal knowledge or belief, four days; duration from history given, four years.

The defendant introduced Miss Lucretia Spears, who testified that she was employed as librarian, and also custodian of the records by the Memphis General Hospital, and that the records of the patients who are received and discharged, or who die at the hospital were in her keeping and custody. She identified Volume 14 of the records of the Memphis General Hospital as the record of "Female generative organs", which is explained to be the record of female patients who have been received at the Memphis General Hospital from July to September, 1927, suffering from female diseases. She was permitted to testify and to introduce the purported record of the case of Gertrude Sanford, and from which it appeared that the insured was admitted to the hospital August 8, 1927. This record showed that the patient died August 12, 1927. The record showed a diagnosis of her case, including the past history, and from which it appeared that she had been treated in the same hospital and was a patient there for a period of two months, four years prior to her death. This record was objected to by plaintiff as being incompetent, and because the witness who produced the record did not make up the record, and did not have personal knowledge. The objections were overruled, and the record was admitted as competent evidence.

At the conclusion of all the evidence the defendant moved the court for a directed verdict in its favor, on the grounds that the evidence showed that the deceased was not in sound health at the time she made the application for the insurance and at the time the policy was issued and delivered to her, and because of the alleged false statement contained in her application in her answer to question 24 hereinbefore referred to, to the effect that she had not had medical or surgical attention in the past five years. This motion was sustained, and the court directed the jury to return a verdict in favor of the defendant, which was accordingly done, and the suit dismissed at the cost of plaintiff. A motion for a new trial by plaintiff was overruled. From the action of the court in directing a verdict in favor of the defendant, and in overruling plaintiff's motion for a new trial, plaintiff prayed and was granted an appeal in the nature of a writ of error to this court, and the appeal has been duly perfected and errors assigned.

The first assignment of error is directed to the action of the court in admitting as evidence over the objection and exception of plaintiff the hospital record of the deceased's last illness, said

record being proven by a lay witness who was the keeper of the records, but who did not make the record, and knew nothing as to the correctness of the record.

The second assignment is directed to the action of the court in admitting as evidence over the objection and exception of plaintiff the certificate or statement of the physician purporting to be a part of the proof of death furnished defendant by plaintiff, but which appellant contends was never identified as such by either the plaintiff or the defendant.

By the third assignment it is contended by appellant that the court erred in holding that the hospital record and the statement of the physician purporting to be a part of the proof of death and the application for the insurance, to be conclusive evidence of the fact that complainant's decedent was not in sound health at the time the insurance in question was applied for and received, and that the court should have submitted for the determination of the jury the question of fact as to whether plaintiff's decedent was in sound health at the time the insurance was applied for and the policy delivered.

By the fourth assignment it is contended that the action of the court directing the verdict was contrary to the law, and that there was no evidence to support the action of the court and the judgment based thereon.

On the question made by the first assignment of error, which goes to the action of the court in admitting as evidence over the objection of plaintiff the hospital record, there seems to be diversity of opinion by the courts and textwriters. We think the decided weight of authority is to the effect that hospital records may be introduced by the custodian of the record where it appears that the person making the record is not available or accessible to testify. This is one of exceptions to the hearsay rule. Mr. Wigmore, in his valuable work on Evidence, in Volume 2, Section 1522, following a comment on this character of evidence, under Section 1521, proceeds with this statement:

"The reasons justifying the admission of this class of statements, untested as they are by the cross-examination, have not been as clearly defined by the judges as in other hearsay exceptions; but they seem fairly clear. They fall within the second general type already described (ante Sec. 1422) i. e. the situation is one where even though a desire to state falsely may casually have subsisted, more powerful motives to accuracy over power and supplant it. In the typical case of entries made systematically and habitally for the recording of the course of business dealings, experience of human nature indicates three distinct though related motives which operate

to secure in the long run a sufficient degree of probable trustworthiness and make the statements fairly trustworthy:

"(1) The habit and system of making such a record with regularity calls for accuracy through the interest and purpose of the entrant; and the influence of habit may be relied on, by very inertia, to prevent casual inaccuracies and to counteract the casual temptation to misstatements. . . ."

"(2) Since the entries record a regular course of business transactions an error or misstatement is almost certain to be detected and the result disputed by those dealing with the entrant. Misstatements cannot safely be made, if at all, except by a systematic and comprehensive plan of falsification. As a rule, this fact (if no motive of honesty obtain) would deter all but the most daring and unscrupulous from attempting the task; . . . In the long run it operates with fair effect to secure accuracy."

The same author (Section 1521) states as follows:

"On the principle of necessity, this exception sanctions the use of statements by persons whose testimony, though not necessarily the sole evidence available on the subject, is yet the only testimony now available from that person. Hence, the usual rule applies that the person must be unavailable as a witness."

It is further said by the same author: (Sec. 1521).

"(1) It is of course at least necessary that the witness should be somehow unavailable. Where the absence of the desired witness is not somehow accounted for (except when a party, . . .) the entries cannot be used."

In 22 C. J. Sec. 1100, p. 902, is the following statement of the rule:

"In the absence of statute, hospital records are as a rule, although not invariably, held not admissible as evidence of the facts stated therein. Such records are sometimes made evidence by statute."

Numerous cases from many jurisdictions are cited in support of the above statement of the rule.

However, in the case of Bolden v. State, 140 Tenn. 118, we have an expression from the Supreme Court of this State that makes the evidence of the hospital record by one who did not keep the record, or make the record, but was the custodian, not admissible in a criminal case. In that case is a quotation from Chaffee v. United States, 18 Wall., (85 U. S. 516, 21 L. Ed., 908) wherein it is said:

"That rule, with some exceptions, not including the present case, requires, for the admissibility of the entries, not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal

knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting if dead, or insane, or beyond the reach of the process or commission of the court. The testimony of living witnesses, personally cognizant of the facts of which they speak, given under the sanction of an oath in open court, where they may be subject to cross-examination, affords the greatest security for truth. Their declaration, verbal or written, must, however, sometimes be admitted when they themselves cannot be called, in order to prevent a failure of justice. The admissibility of the declaration in such cases limited by the necessity upon which it is founded.''

In Bolden v. State, supra, the court quotes from 5 Enc. Ev. 273, as follows:

''Hospital records of the condition of patients are held to be competent as entries by third and disinterested person made in the routine of the business of the hospital.''

However, in the same case the court said: ''But as said above, such entries are not to be received in a criminal case if the enterer can be produced at the trial to testify in person to the matters he has recorded.''

It would thus appear that the court in that case recognizes a distinction in the rule as applied to criminal cases from its application to a civil suit.

We are of opinion that the further rule with reference to the introduction of a hospital record, where the record is kept in regular course and it is a part of the work and a custom of the institution to make and preserve a record of patients received into the hospital for treatment, that the record would be competent evidence if it appears that the physician or surgeon making the entry is for any reason not available as a witness. This is we understand to be an exception to the ''hearsay rule.'' In the present case it appears that the physician who attended the deceased insured during her last illness made the entry on the hospital records, and which contain the analysis and diagnosis of the type of illness from which the deceased was suffering. The record then recites that the duration of the illness from the personal knowledge of the enterer (the attending physician) was four days, and the further statement that from the history of the case she had been suffering from this affliction for four years. It thus appears that the doctor who made the entry, or who is alleged to have made the entry on the hospital records, did not have personal knowledge of any illness of the insured prior to four days preceding her death, and that the statement with reference to the duration of the illness for a period of four years is stated by the enterer to be from a history of the case

and not from any personal knowledge of the enterer. From what source the doctor obtained the information or history of the patient's illness is not disclosed by the hospital record offered in evidence. It also appears that this doctor was available as a witness, or at least there is nothing in the record to indicate that he was not available as a witness. If it be conceded that the hospital record would be admissible as evidence even where it appeared that the doctor making the entry or entries was available as a witness, and that this would not be in violation of the hearsay rule, certainly so much and such parts of the record as showed upon its face to be a statement not within the knowledge of the physician, but a statement based upon information obtained from some undisclosed source, would not be competent evidence that the insured was not in sound health at the time the application for insurance was signed and at the time the policy was delivered to the insured. The Insurance Company defends on the ground that the insured made a false representation in answering question 24 in the application hereinbefore referred to and quoted, and that this statement to the effect that she had not been attended by a physician for a period of five years prior to the date of the application being a false statement, was a breach of warranty, and because of which no recovery could be had on the policy. Several witnesses testified in behalf of the plaintiff that they were intimately acquainted with the deceased and had known her for several years prior to her death, and that she appeared to be in good health until her last illness resulting in her death about fours days after she was taken to the hospital. The plaintiff testified on cross-examination that the insured had been a patient in the Memphis General Hospital several years prior to her death. At one place in her evidence she testified on cross-examination as follows:

"Q. Do you remember when she was in the General Hospital about four years ago, when she was out at the hospital? A. Yes, sir, I remember that time but she was not—I think she was constipated. I think they pronounced it constipated, something like that.

"Q. Four years ago? A. Been longer than that, hasn't it?

"Q. I am just asking you? A. No, sir.

"Q. You just testified you never knew of her being sick at any time? A. I said she didn't have a doctor, I didn't have a doctor with her.

"Q. But she went to the hospital? A. Yes, sir.

"Q. Tell the jury how long she stayed in the hospital at that time? A. She was not there long. I didn't keep no count.

"Q. Was she in the General Hospital two months? A. You mean the last time?

"Q. No, the time before that, about three or four years ago? A. I disremember. I just don't remember how long ago it was. I know I never had no doctor with her."

Outside of the hospital record containing the statement of the alleged attending physician, in which a diagnosis of the illness of the patient is given, and the further statement contained in the record that from the history of the case her illness had continued for four years, or that she had been in the hospital four years prior to the time of her death, and the certificate of the attending physician alleged to have been filed by plaintiff as a part of the proof of death, which also contained a statement by the physician that the duration of the illness from the history of the case had continued for four years, there is no evidence in the record that the deceased had been under the care of a physician or in a hospital within five years prior to the signing of the application for the insurance. As above stated, several witnesses testified that she appeared to be in good health for several years prior to her death. These witnesses claimed to have had an intimate acquaintance with her and to have seen her regularly, every day or every few days for several years prior to her death.

On the question of the admissibility of the written statement of the attending physician claimed to have been furnished by the plaintiff to the defendant as a part of the proof of death, and as being in violation of the hearsay rule, we are of the opinion that so much of the statement as undertook to state the duration of the illness as having been over a period of four years, where it appears from the statement that it is based upon information in the nature of the history of the case, and where it thus appears that the attending physician did not have any personal knowledge of the duration of the illness except for the four days preceding her death, was incompetent and of no evidential value.

In the recent cases of Nat'l Life Ins. Co. v. Shirley Turner, 17 S. W. (2d), 13, the Supreme Court held that a statement of the physician which was offered by the defendant, or rather where the plaintiff on cross-examination was requested to file the written statement of the physician, and which was offered in evidence by the plaintiff, was incompetent and in violation of the hearsay rule. In that case the court quoted from Wigmore on Evidence in a statement of the rule, as follows:

"A party's use of a document made by a third person will frequently amount to an approval of its statements as correct and thus it may be used against him as an admission by

adoption. A common instance of the application of this principal is the insured's or beneficiaries' presentation of proofs of loss to the insurer.''

The court in the Shirley Turner case proceeds with the following statement:

"This rule is based upon the principle of estoppel, but it has no application in the instant case. The beneficiary made no statement in writing or otherwise to the insurer to the effect that the insured had tuberculosis at the time of the issuance of the policies, but, on the other hand, when told by the representatives of the company that he was so diseased she repudiated any such idea and declined to settle upon that basis. So that the insurance company was in nowise misled or prejudiced, and did not rely upon any statement which she had made to it.''

We understand the general rule to be that the proofs of loss or death furnished by the insured, or the beneficiary, in compliance with the provision in the policy which requires proofs of death or loss to be furnished by the beneficiary, that such proof of death when furnished creates a prima-facie case that the cause of death was as stated in the proofs, and other facts contained in the proofs are as shown by such proofs.

The rule is thus stated in 33 C. J., p. 18:

"As against the insured of claiming under the policy the notice and proofs of loss are prima-facie evidence of the statements contained therein and they are binding on him, unless withdrawn or corrected, or contradicted or explained, and the contents of the notice of proofs cannot be corrected or denied for the first time at the trial of an action on the policy.''

However, this rule has not been followed in its entirety and as broadly as above stated, by the Supreme Court of this State and by this court. While it is generally held that proofs of loss or of death furnished by the insured of the beneficiary are prima-facie evidence of the statements contained therein, this is not conclusive and the beneficiary at the trial of the case may introduce evidence to show that such statements are the result of a mistake or a misunderstanding of the true facts, and show by evidence at the trial the true cause of the death and other facts, even though such evidence may, in a measure, contradict the statements contained in the proofs of death as furnished the insured by the beneficiary.

But in the instant case there is no controversy as to the cause of the death or the nature of the illness of the deceased. The only question presented is as to whether the deceased was in sound health at the time she applied for the insurance policy and at the time the policy was issued and delivered, and the answer to question

24 in the application. If the written statement purporting to be a part of the proof of death furnished by the beneficiary and identified by plaintiff, not clearly but we think sufficiently, as the document which she procured from the physician and delivered to the agent of the defendant in compliance with the provision requiring her to furnish proof of death and a statement of the physician as to the cause of the death, is competent, is certainly not conclusive and especially so much of the statement as undertakes to give the duration of the illness, where it appears from the statement itself that it is made upon information received by the physician from some undisclosed source, and given merely as a purported history of the duration of the illness. This, we think, comes clearly within the hearsay rule, and to that extent, at least, was incompetent.

We are of opinion that the learned trial judge was in error in sustaining the motion for a directed verdict and in dismissing plaintiff's suit.

It results that the judgment of the lower court is reversed and the cause is remanded to the Circuit Court of Shelby Court for a new trial. Appellee will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.