IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2024

## RONNIE BENNETT v. TENNESSEE DEPARTMENT OF HUMAN SERVICES

**Appeal from the Chancery Court for Shelby County**
**No. CH- 18-0878-III        JoeDae L. Jenkins, Chancellor**

———————————————————

**No. W2023-01200-COA-R3-CV**

———————————————————

This appeal arises from a decision by the Tennessee Department of Human Services denying a recertification application for Supplemental Nutrition Assistance Program benefits to a one-person household based upon the determination that the household's income exceeded the eligibility requirements. After the petitioner questioned the finding, the trial court affirmed the decision of the agency and dismissed the petition for judicial review. Upon our review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

Ronnie Bennett, Memphis, Tennessee, pro se.

Jonathan Skrmetti, Attorney General and Reporter, and Carrie A. Perras, Assistant Attorney General, for the appellee, Tennessee Department of Human Services.

## OPINION

## I. BACKGROUND

The petitioner, Ronnie Bennett, received Supplemental Nutrition Assistance Program ("SNAP") benefits that were set to end on October 31, 2017. He filed a recertification application on September 20, 2017, stating that his only source of income was $1,146 in social security disability ("SSD") benefits per month. After completing an interview on October 6, 2017, a Tennessee Department of Human Services ("DHS")

caseworker conducted a search to verify Mr. Bennett's application information and determined that he was receiving Veterans Affairs ("VA") benefits in the amount of $838.64 per month and SSD in the amount of $1,296 per month. This determination was made after calling a VA hotline and checking an online social security query system. After adding Mr. Bennett's two sources of income—from the VA and SSD—his total gross income was $2,134.64; after deducting the standard deduction ($160), the child support deduction ($150), and a shelter utility deduction ($78),[1] Mr. Bennett's adjusted net income was $1,746. As Mr. Bennett was receiving more than the maximum net monthly income to receive SNAP benefits for a one-person household of $1,005, his application for recertification was denied and his benefits were scheduled to terminate on October 31, 2017.

After Mr. Bennett filed an appeal, on December 7, 2017, a Hearing Officer reversed and remanded DHS's decision to terminate benefits. That Hearing Officer determined that DHS had not allowed Mr. Bennett the opportunity to verify the VA benefits through a Client Free Form Notice ("CNFF") or otherwise to resolve the discrepancy between his statement of income (SSD alone) and what DHS had discovered (the VA benefits). No appeal was taken from this order.

Shortly thereafter, on December 18, 2017, DHS mailed Mr. Bennett a CNFF notice requesting verification of the VA benefits. On January 9, 2018, DHS sent another letter to Mr. Bennett seeking verification by providing a VA award notice or a letter on VA letterhead within ten days. According to Mr. Bennett, he faxed his bank statement showing that he did not receive VA benefits; DHS, however, disputes receiving this fax and argues that a bank statement is not proper verification that Mr. Bennett did not receive benefits because he could have multiple bank accounts. Mr. Bennett contends that he only received a one-time EAJA[2] payment from the VA. In his pleadings, Mr. Bennett asserted: "To get a letter stating I rec[ei]ve no[] benefits from any program, dept, grant, division from VA would not be possible."

According to DHS, a caseworker verified its information by speaking with an individual at the VA and calling the VA self-service help line. Both sources confirmed that Mr. Bennett received $855.41 in monthly VA benefits. DHS also spoke with an individual at the National VA Service Center who confirmed the same information. Because of an increase from the previous year, the amount of SSD benefits that Mr. Bennett received also increased in January 2018 to $1,322 per month. On January 24, 2018, DHS mailed another letter to Mr. Bennett denying his recertification application because no response or

---

[1] The shelter utility deduction was calculated based on Mr. Bennett's reported shelter cost of $679 plus the standard utility allowance of $311, which totaled $990. Fifty percent of Mr. Bennett's adjusted income was $912 (($2134 − $150 − $160) ÷ 2). DHS then subtracted $990 from $912 to determine Mr. Bennett's shelter utility deduction of $78. 7 C.F.R. § 273.9(d)(6)(ii).

[2] Equal Access to Justice Act, 28 U.S.C. § 2412.

verification of his VA benefits was received and his income remained over the maximum amount. Mr. Bennett again appealed his denial.

At the hearing, the Hearing Officer took judicial notice of the previous order and appeal. He gave Mr. Bennett the opportunity to inspect DHS's exhibits prior to and at the beginning of the hearing, yet Mr. Bennett declined to do so. DHS also emailed the exhibits to Mr. Bennett before the scheduled hearing using the same email address he had been using during the process. DHS program coordinator, Jennifer Walker, testified why Mr. Bennett was denied benefits due to the fact that he earned more than the maximum net income amount of $1,005 for a one-person household. She reviewed the fact that after adding Mr. Bennett's two sources of income—the VA and SSD—and making the appropriate deductions, his adjusted net income was $1,810, yet his recertification application for SNAP benefits listed only $1,146 in SSD income. Mr. Bennett signed the application attesting to its truth and agreeing that DHS could use the information provided to check other computer and government records to verify eligibility for benefits. He also agreed to provide further information to DHS if requested to do so.

In an initial order filed on March 14, 2018, the Hearing Officer found that Mr. Bennett did not provide verification that he did not receive VA benefits and DHS properly independently verified that Mr. Bennett was indeed receiving benefits from the VA. The Hearing Officer observed that although securing adequate verification is a joint responsibility, under the law, it is the ultimate responsibility of the household.

After a petition for reconsideration was denied, on June 14, 2018, Mr. Bennett sought judicial review. Briefing was eventually completed and the matter was heard on July 6, 2023. The trial court denied the petition and affirmed the Hearing Officer's ruling, finding that Mr. Bennett had not rebutted DHS's determination and that substantial and material evidence supported the decision that Mr. Bennett's net income exceeded the limit, making him ineligible for SNAP benefits. Mr. Bennett filed a timely notice of appeal.

## II. ISSUES

The issues on appeal are as follows:

A. Whether Mr. Bennett's failure to comply with Rule 27 of the Tennessee Rules of Appellate Procedure constitutes a waiver of the merits of this case on appeal.

B. Whether the trial court properly dismissed the petition for judicial review and affirmed DHS's termination of Mr. Bennett's SNAP benefits.

## III. STANDARD OF REVIEW

The Uniform Administrative Procedures Act ("UAPA") provides for judicial review of agency decisions. Tenn. Code Ann. § 4-5-322. "The reviewing court's standard of review is narrow and deferential." *StarLink Logistics, Inc. v. ACC, LLC*, 494 S.W.3d 659, 668-9 (Tenn. 2016) (citing *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)). In the instant case, DHS's decision may be reversed or modified only if the decision is:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A)(i) . . . unsupported by evidence that is both substantial and material in the light of the entire record;
(ii) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . [.]

Tenn. Code Ann. § 4-5-322(h).[3]

As a general principle, "courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *StarLink Logistics, Inc.*, 494 S.W.3d at 669 (citing *Tenn. Envtl. Council, Inc. v. Tenn. Water Quality Control Bd.*, 254 S.W.3d 396, 401-02 (Tenn. Ct. App. 2007)). When an agency is acting "within its area of expertise and within the exercise of its judgment," a reviewing court will not overturn the agency decision "solely because the court disagrees with an agency's ultimate conclusion." *StarLink Logistics, Inc.*, 494 S.W.3d at 670. Accordingly, courts do not review questions of fact de novo, even if the evidence could support a different result. *Id.* at 669.

Substantial and material evidence is defined as "relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed." *Armstrong v. Neel*, 725 S.W.2d 953, 955 n.2 (Tenn. Ct. App. 1986). The burden of showing such evidence is not onerous; the evidence need not reach the level of preponderance of the evidence, but there should be more than a "scintilla or glimmer" of evidence. *StarLink Logistics, Inc.*, 494 S.W.3d at 669

---

[3] This statute was amended in 2021, but the amendments do not change the analysis before us.

(quoting *Wayne Cnty.*, 756 S.W.2d at 280). A decision that is supported by evidence may still be arbitrary or capricious if "not based on any course of reasoning or exercise of judgment, or . . . [it] disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 670 (quoting *City of Memphis v. Civil Serv. Comm'n of Memphis*, 216 S.W.3d 311, 316 (Tenn. 2007)).

## IV. DISCUSSION

### A.

We acknowledge Mr. Bennett's status as a pro se litigant. The State notes that although Mr. Bennett is representing himself pro se on appeal, pro se litigants must still comply with substantive and procedural rules:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

The State contends that Mr. Bennett has failed to comply with the procedural rules governing what is required in a brief and has accordingly waived his issues on appeal. Admittedly, Mr. Bennett has failed to include a substantive statement of the issues on appeal that Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure requires. In the instant appeal, Mr. Bennett's section titled "STATEMENT OF THE ISSUES PRESENTED FOR REVIEW" does not actually include any question or issue for us to review. *See Forbess v. Forbess*, 370 S.W.3d 347, 357-58, 357 n.13 (Tenn. Ct. App. 2011) (refusing to review issues not included in a statement of issues for review); *see also* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). As this court has held,

> [t]he requirement of a statement of the issues raised on appeal is no mere technicality. First, of course, the appellee is entitled to fair notice of the appellate issues so as to prepare his or her response. Most important, this [c]ourt is not charged with the responsibility of scouring the appellate record for any reversible error the trial court may have committed.

*Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, *4 (Tenn.

Ct. App. 2011).

In spite of the deficiencies in Mr. Bennett's brief, we exercise our "discretion to suspend or relax some of the rules for good cause" in order to consider the merits of this appeal. *Paehler v. Union Planters Nat. Bank*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997). We perceive that Mr. Bennett takes issue (1) with the procedure of the contested case hearing, and (2) the evidence establishing his ineligibility for SNAP benefits.

As noted, many of Mr. Bennett's concerns relate to procedures used at the hearing. He implies that the Hearing Officer at the administrative hearing conspired with DHS to present evidence on its behalf and had ex parte communications with the agency. He alleges that "[t]he Hearing Officer apparently asked for [DHS's] evidence pre-trial" or "was asked by [DHS] to assist with the transportation and presentation of their evidence" and "apparently made an arrangement to act as a proxy for [DHS]." Mr. Bennett also takes issue with the fact that the Hearing Officer offered to give DHS's exhibits to him for his review. The actions of the Hearing Officer comply with 7 C.F.R. § 273.15(p)(1) in allowing the household an opportunity to review the evidence before and during the hearing. Further, a Hearing Officer is allowed to "[r]equest, receive and make part of the record all evidence determined necessary to decide the issue[.]" 7 C.F.R. § 273.15(m)(2)(ii); *see also* Tenn. Comp. R. & Regs. 1240-05-06-.01 (the agency shall admit and give probative effect to evidence). Accordingly, the Hearing Officer acted properly in reviewing and handling the evidence submitted by DHS and offering to provide a copy to Mr. Bennett.

Mr. Bennett believes that he was not given a proper opportunity to examine the evidence prior to the hearing, in violation of 7 C.F.R. § 293.15(o) and (p). 7 C.F.R. § 273.15(p) states that a household should be given an adequate opportunity to examine the documents and records to be used at the hearing at a reasonable time before the hearing as well as during the hearing. *See also* Tenn. Comp. R. & Regs. 1240-05-06-.02 ("[a]ny party to a contested case shall have the right to examine…all documents and records used as evidence, at a reasonable time *either before the date of the hearing or during the hearing*" (emphasis added)). DHS emailed Mr. Bennett the exhibits prior to the hearing using the email address he had utilized to communicate about his case. The record reveals that exhibit 1 was Mr. Bennett's SNAP application that he completed and submitted himself; exhibits 3 and 4 were letters DHS previously mailed to Mr. Bennett during this case. Accordingly, he had already seen these three exhibits prior to the hearing. However, despite the Hearing Officer providing Mr. Bennett the opportunity to again review the exhibits prior to and at the beginning of the hearing and offering to print them for him, he declined to review them. Further, he did not ask for a continuance to allow for review of the exhibits. Instead, he accused the Hearing Officer of "creating evidence" for DHS. There is no merit to this argument.

Mr. Bennett also contends that DHS's witness's testimony was inadmissible under the business records exception. Tenn. R. Evid. 803(6). The rule "rests on the premise that

records regularly kept in the normal course of business are inherently trustworthy and reliable." *Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995) (citing *Hill v. National Life & Accident Ins. Co.*, 11 Tenn. App. 33, 37-38 (1929)). As noted in *Alexander*, the exception's purpose "is to facilitate the use of business records by eliminating the expense and inconvenience of calling numerous witnesses involved in the preparation and maintenance of the records. *Id.* at 700. The five requirements of the business records exception are:

> 1. The document must be made at or near the time of the event recorded;
>
> 2. The person providing the information in the document must have firsthand knowledge of the recorded events or facts;
>
> 3. The person providing the information in the document must be under a business duty to record or transmit the information;
>
> 4. The business involved must have a regular practice of making such documents; and
>
> 5. The manner in which the information was provided or the document was prepared must not indicate that the document lacks trustworthiness.

*Id.;* Tenn. R. Evid. 803(6). Jennifer Walker, DHS's witness, read exhibit 2 into evidence and explained that this exhibit was an evidence packet prepared by DHS. Regarding the first, second, and third requirements, as DHS employees work on and investigate a case, they enter notes into DHS's system to track their discussions and progress, which is later used to compile an evidence packet. As to requirement four, DHS makes these evidence packets in the normal course of business for this program. Regarding requirement five, there is no indication anywhere in the record that this evidence lacks trustworthiness.

A custodian or other qualified witness can lay the foundation for business records. Tenn. R. Evid. 803(6). As this court has observed previously, a qualified witness should be given broad interpretation and can be a person who is personally familiar with the business's recordkeeping system and able to explain the recordkeeping procedure. *Alexander*, 903 S.W.2d at 700. Ms. Walker is a program coordinator for DHS and "responsible for gathering information[,]…creating [e]vidence [p]ackets from the…database," reviewing and analyzing these packets, and "testifying on behalf of DHS on the actions that are taken." As noted by the State, she is a qualified witness to lay the foundation for these records, as she is familiar with the process used to create these records and prepares these evidence packets herself. She was not required to be the person who actually recorded the information. *Id.* All the requirements for the business records exception were met.

Prior to the hearing, the Hearing Officer sustained Mr. Bennett's objection to DHS's witnesses appearing telephonically. Now Mr. Bennett complains about DHS's attorney participating by phone in the hearing. Only DHS's representative must appear in person, and she did. *See* 7 C.F.R. § 273.15(o). Mr. Bennett did not object to DHS's attorney appearing telephonically. As Ms. Walker, DHS's only witness, appeared in person, the representative requirement was met and the hearing was properly conducted.

Mr. Bennett also argues that the quashing of the subpoena of Tana Black, a DHS caseworker, constitutes reversible error. A subpoena was issued for Ms. Black on February 16, 2018, but it was not served until March 2, 2018, a few days before the hearing. DHS filed a motion to quash the subpoena and sought a protective order the next business day, arguing that Mr. Bennett cited no reason for calling Ms. Black, her testimony would be cumulative and is available in the business records, Ms. Black is wheelchair bound and does not have a car, and the cost of transporting her to the hearing would be unduly burdensome on DHS. The Hearing Officer granted this motion upon finding that Mr. Bennett had not cited any valid reason for calling Ms. Black or how her testimony would be relevant, any relevant actions taken by DHS are available in the business records, and requiring her to appear in person would create a significant undue burden and expense on DHS. These are appropriate and valid reasons to limit discovery. *See* Tenn. Comp. R. & Regs. 1240-05-06-.04(2) & (5); Tenn. R. Civ. P. 26.02 (limiting discovery if it is unreasonably cumulative, duplicative, or obtainable from some other source that is more convenient, less burdensome or less expense; or if it is unduly burdensome or expensive). Significantly, as Mr. Bennett waited until mere days before trial to serve the subpoena, the Hearing Officer's decision to void it the day before the hearing was proper. *See* Tenn. Comp. R. & Regs. 1240-05-04-.03(2) (may void subpoena if it is unreasonable and oppressive).

Mr. Bennett further contends that being asked to take an oath and testify constitutes reversible error. He has waived this argument by failing to object to taking an oath or testifying at the hearing below. *See In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009) ("Because Father did not properly raise this issue in the trial court, he has waived his right to argue this issue for the first time on appeal."); *see also Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) (issues have been properly raised on appeal when they were raised and preserved at trial). This and none of the other alleged procedural errors raised by Mr. Bennett affect the outcome of the case or merit reversal. Tenn. R. App. P. 36.

**B.**

Title 7 of the United States Code deals with Agriculture, and Chapter 51 of that Title outlines SNAP, which was authorized by Congress "[t]o alleviate … hunger and malnutrition … permit[ing] low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011. "Participation in the

supplemental nutrition assistance program shall be limited to those households whose income and other financial resources, held singly or in joint ownership, are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 U.S.C. § 2014.

As noted by the State, SNAP, a federal program, must be administered by states in accordance with the federal statutory scheme governing the program. *See* 7 C.F.R. 276.1(a)(4). Tennessee Code Annotated section 71-5-305 mandates that "[a]ssistance under this part shall be granted to any needy person, household or low-income family *that meets the requirements* set forth in federal statutes and such standards of need as may be established by [DHS] or required by any subsequently enacted federal statute on the same subject." (emphasis added.) *See also* Tenn. Comp. R. & Reg. 1240-01-10-.04 ("The Food Stamp Program is authorized by the Food Stamp Act of 1977 . . . . Regulations issued pursuant to the Act are contained in 7 C.F.R. Parts 270-282. [DHS] is empowered . . . to comply with any requirement that may be imposed . . . by federal law or regulation for the provision of Food Stamp benefits to Tennessee's Food Stamp applicants and recipients.").

One of the hallmarks of the federal scheme in determining SNAP benefits eligibility is the calculation of an applicant's income. 7 C.F.R. § 273.9. 7 C.F.R. § 273.9(a) provides that "Participation in the Program shall be limited to those households whose incomes are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet. Households which contain an elderly or disabled member shall meet the net income eligibility standards for SNAP." "Household income shall mean all income from whatever source" and includes the following unearned income:

(ii) Annuities; pensions; retirement, veteran's, or disability benefits ….

7 C.F.R. § 273.9(b)(2)(ii). Thus, the monies received from SSD and VA benefits are federally mandated to be counted as income.

DHS is required to verify income reported by the applicant at initial certification and recertification. 7 C.F.R. 273.2(f)(8); Tenn. Comp. R. & Reg. 1240-01-16-.03; Tenn. Comp. R. & Reg. 1240-01-16-.06. DHS must also verify any questionable information and may do so using collateral contacts. 7 C.F.R. § 273.2(f); Tenn. Comp. R. & Regs. 1240-01-16-.01, 1240-01-16-.03, 1240-01-16-.06. Questionable information is defined as inconsistent statements made by the applicant or inconsistent information received by the worker. Tenn. Comp. R. & Regs. 1240-01-16-.03(13). "A collateral contact is an oral confirmation of a household's circumstances by a person outside of the household" and a social service agency can be the source of the collateral contact. 7 C.F.R. § 273.2(f)(4)(ii); Tenn. Comp. R. & Regs. 1240-01-16-.02.

Applicants are required to provide a social security number and DHS may use the social security number in the administration of the program and "to determine such a

household's eligibility to receive assistance and the amount of assistance, or to verify information related to the benefit of these households." 7 C.F.R. § 273.6(a) & (f); 7 C.F.R. § 272.8. DHS may disclose necessary information to the social service agency in a collateral contact to "get the information being sought." 7 C.F.R. 273.2(f)(4)(ii). If there is a discrepancy or a contradiction in the information DHS receives, the applicant should be allowed a reasonable opportunity to resolve the discrepancy and has the primary responsibility for providing documentary evidence to support statements on the application and resolve any questionable information. 7 C.F.R. § 273.2(f)(4)(iv), (5)(i); Tenn. Comp. R. & Regs. 1240-01-16-.02; Tenn. Comp. R. & Regs. 1240-01-03-.06(3)(d).

As noted above, the net and gross income eligibility standards are based on the federal income poverty levels. 7 C.F.R. § 273.9(a). Mr. Bennett's net income level is at issue because he was a disabled member. 7 C.F.R. § 273.9(a). When he applied for SNAP recertification in 2017, one-person households whose income was less than the then-federal poverty net income level of $1,005 were eligible for benefits. 7 C.F.R. § 273.9(a)(3)(i). Mr. Bennett's income exceeded the federal poverty net income level, which is supported by the evidence in the record. DHS received questionable information that Mr. Bennett was receiving monthly VA benefits, which were not reported on his application.

DHS mailed a CNFF letter requesting verification of Mr. Bennett's VA benefits on December 18, 2017; another letter was sent to Mr. Bennett on January 9, 2018, again seeking proof that he did not receive VA benefits. Mr. Bennett had ten days to respond, as set out by 7 C.F.R. § 273.2(f). He did not provide the requested documentation. Thus, DHS sought to independently verify the information through collateral contact. *See* 7 C.F.R. § 273.2(f)(4)(ii); Tenn. Comp. R. & Regs. 1240-01-16-.02. DHS spoke with individuals at the VA to verify that Mr. Bennett received $855.41[4] in monthly VA benefits. These actions were proper because DHS is allowed to make collateral contacts to verify an applicant's income, including by contacting other social service agencies like the VA, and DHS can use an applicant's social security number to determine eligibility. *See* 7 C.F.R. § 273.2(f)(4)(ii); 7 C.F.R. § 273.6(a) & (f); 7 C.F.R. § 272.8; Tenn. Comp. R. & Regs. 1240-01-16-.02. Additionally, Mr. Bennett signed the application attesting to its truth and agreeing that DHS could use the information he provided to check other computer and government records to verify that he qualifies for benefits. Accordingly, Mr. Bennett's allegations that DHS was impersonating him and using his information illegally is without merit, as use of this information is permitted by state and federal law and approved by Mr. Bennett via his application. DHS's actions in verifying Mr. Bennett's income were not only proper but required.

After determining that Mr. Bennett's VA and SSD benefits resulted in his gross income after deductions amounting to more than the maximum 2017 Federal Poverty net income limit of $1,005, DHS properly denied the recertification application. Mr. Bennett

---

[4] The amount of VA benefits Mr. Bennett was receiving increased from the previous year.

submitted nothing to contradict DHS's evidence at the contested case hearing. Although Mr. Bennett allegedly submitted a bank statement to DHS showing that he did not receive VA benefits, a bank statement was not proper and valid verification. Nor did Mr. Bennett produce this bank statement at the administrative hearing or any other evidence.[5] It is Mr. Bennett's primary responsibility to provide any evidence to support his statements on the application and resolve any questionable information. 7 C.F.R. § 273.2(f)(4)(iv), (5)(i); Tenn. Comp. R. & Regs. 1240-01-16-.02; Tenn. Comp. R. & Regs. 1240-01-03-.06(3)(d). Because Mr. Bennett failed to comply with these requirements, the Hearing Officer properly affirmed the denial of benefits.

DHS's decision does not violate constitutional or statutory provisions. Further, the record does not support a conclusion that DHS's conclusions and decisions were in excess of its statutory authority, made upon unlawful procedure, or arbitrary or capricious, and DHS's decision was supported by substantial and material evidence. Accordingly, we affirm the decision of the Chancellor affirming DHS's decision and dismissing the petition for judicial review. [6]

**CONCLUSION**

For the reasons stated, the decision of the trial court is affirmed and the case is remanded. Costs of the appeal are taxed to the appellant, Ronnie Bennett.

_____
JOHN W. MCCLARTY, JUDGE

---

[5] Mr. Bennett's brief refers to a check he submitted in his first appeal showing a one-time payment from the VA for $21.25. He did not present this check or any other evidence during his second appeal, nor does this check explain why the VA on numerous occasions verified Mr. Bennett was receiving $855 per month.

[6] Mr. Bennett also does not cite any law in support of his request to receive interest or compensatory and punitive damages. Indeed, the state is immune from such requests. *See* Tenn. Code Ann. § 20-13-102.